NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5695-13T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HORACE BLAKE,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

February 26, 2016

APPELLATE DIVISION

Submitted October 15, 2015 — Decided February 26, 2016

Before Judges Alvarez, Ostrer and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 11-12-1890.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the briefs).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Defendant Horace Blake appeals from the trial court's April 3, 2014, order denying his petition for post-conviction relief (PCR) without an evidentiary hearing.  He collaterally challenges his conviction, after a guilty plea, of third-degree

possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(b)(11), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). Defendant contends that his trial counsel was ineffective because he failed to adequately advise him of the immigration consequences of his plea. Having considered defendant's arguments in light of the record and applicable principles of law, we affirm.

I.

We discern the following facts from the record. On July 26, 2011, defendant was stopped on the New Jersey Turnpike. He admitted to the officer that he was under the influence of marijuana, and was transporting five pounds of marijuana for the purpose of distribution. Defendant also had a five-year-old child in the car who was not restrained in a safety seat.

A Middlesex County Grand Jury indicted defendant on December 20, 2011, charging him with second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count one); second-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(10)(b) (count two); and fourth-degree possession of marijuana over fifty grams, N.J.S.A. 2C:35-5(a)(3) (count three).

Defendant remained incarcerated in lieu of bail until his plea hearing on June 29, 2012. Defendant pleaded guilty to

third-degree endangering the welfare of a child, and third-degree possession of marijuana with intent to distribute. Count three of the indictment and various motor vehicle offenses were subsequently dismissed. The plea agreement called for a sentence of probation, conditioned upon 364 days in jail, and immediate sentencing. The court sentenced defendant in accord with the plea agreement, deeming the 340 days that defendant had already spent in custody fulfilled the custodial portion of his sentence.

At the combined plea and sentencing hearing, there was extensive discussion of the immigration consequences of defendant's plea. Defendant was made aware that he would be taken into custody by federal immigration officials immediately upon being sentenced. The section of the plea form describing promises made to defendant by the prosecutor, his attorney, or anyone else, stated that defendant was "to be released to ICE [Immigration and Customs Enforcement] custody forthwith."

In response to question seventeen of the plea form, defendant admitted he was not a citizen and acknowledged immigration consequences of his plea.[1] The form stated:

---

[1] Defendant utilized the August 1, 2011, revision of the plea form. See Administrative Directive #05-11 "Criminal Plea Form — Question Regarding the Immigration Consequences of a Guilty Plea" (August 1, 2011), https://www.judiciary.state.nj.us/
(continued)

A-5695-13T4

17. a. Are you a citizen of the United States?

   If you have answered "No" to this question, you must answer Questions 17b — 17f. If you have answered "Yes" to this question, proceed to Question 18[.]

b. Do you understand that if you are not a citizen of the United States, this guilty plea may result in your removal from the United States and/or stop you from being able to legally enter or re-enter the United States?

c. Do you understand that you have the right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status?

d. Have you discussed with an attorney the potential immigration consequences of your plea? If the answer is "No," proceed to question 17e. If the answer is "Yes," proceed to question 17f.

e. Would you like the opportunity to do so?

f. Having been advised of the possible immigration consequences and of your right to seek individualized legal advice on your immigration consequences, do you still wish to plead guilty?

---

(continued) directive/2011/dir_05-11.pdf. See also Report on Revisions to the Plea Form to Address Immigration Consequences of a Guilty Plea, Exhibit A to Report of the Supreme Court Committee on Criminal Practice (Feb. 15, 2011).

A-5695-13T4

Defendant answered "No" to 17a, "Yes" to 17b, 17c, 17d and 17f, and did not respond to 17e. The judge orally recited these questions, and elicited the same responses from defendant, except that he also responded in the negative to 17e.

During the colloquy between the court and counsel, defendant acknowledged that the drug conviction was a deportable offense; he faced the "risk of deportation"; ICE would immediately take him into custody; and, he would be given the opportunity to resist removal. The following exchange took place between defendant and his counsel:

> Q: Mr. Blake, . . . your decision [to] accept[] the plea is ultimately based upon the advice you received, the possession with intent to deliver is a third[-]degree offense, [and] is in fact considered a deportable offense, you understand that?
>
> A: Yes, sir.
>
> Q: It is also very likely although not quite as certain that the third[-]degree endangering is also a deportable offense, you understand that?
>
> A: Yes, sir.

Defense counsel then reviewed defendant's decision to forego a suppression motion, challenging the traffic stop. Counsel confirmed defendant's understanding that if the motion were successful, "the risk of immigration consequences would disappear," but if unsuccessful, "not only would the risk of

deportation remain but [defendant] would be facing State Prison . . . ." Counsel then continued, confirming defendant's understanding the deportation was "likely":

> Q: Now, as the judge was talking to you the decision you're making today is ultimately to terminate your custody in Middlesex County, to go to immigration and to deal with either deportation which is likely or any other opportunities that you might have, is that what you're making the decision to do?
>
> A: Yes, sir.

In discussing defendant's request for immediate sentencing, the judge stated, "And your attorney wants me to release you at the time of sentencing today so you can go straight into ICE custody and start that process so you could fight to stay in this country?" Defendant responded, "Yes, sir." On the other hand, in discussing defendant's license suspension, the court stated, "[I]t's not like you're going to be released back into the community right away, do you understand that?" After sentencing, the judge added, "If you stay in this country, you're on probation. . . . If you get released back into the community you need to report to probation here in New Jersey, come see me. If ICE lets you go you post bail, you come see me."

In a direct appeal before the excessive sentencing calendar on March 6, 2013, appellate counsel argued defendant should be

afforded "the opportunity . . . to revisit this plea based on the fact that [defendant] didn't know all the consequences" of his plea. The State responded that the plea hearing record demonstrated that defendant understood the immigration consequences of his plea. The court affirmed defendant's sentence and conviction. State v. Blake, No. A-1679-12 (App. Div. Mar. 6, 2013).

Defendant's pro se PCR petition followed in April 2013. In his supporting certification, defendant alleged he received ineffective assistance of counsel in various respects. Regarding his immigration status, he alleged his attorney was ineffective by failing to seek a judicial recommendation against deportation (JRAD), although the Immigration Act of 1990 repealed the provision permitting JRADs. See State v. Gaitan, 209 N.J. 339, 359-60 (2012), cert. denied, __ U.S. __, 133 S. Ct. 1454, 185 L. Ed. 2d 361 (2013). Defendant also asserted his attorney pressured him to plead guilty, insinuating counsel did so because he was unprepared. Defendant asserted counsel missed four court dates; failed to challenge the State's version of facts; and failed to file motions on his behalf.

In the context of his claim that counsel pressured him, defendant referenced the likelihood of his deportation, which we quote without correcting grammatical and spelling errors:

[Counsel] had [a] plea bargain agreement in his hand. Telling me to sign, go to immigration get Deported back to Jamaica. There are many ways to get back to the United States. Even though I told him I wasn't selling the Marijuana, I made a regrettable mistake of possession and would could of prove it in the Court of Law.

He reiterated that he "had no way of knowing that this lawyer had inadequately inform him that he should plea guilty, be deported to Jamaica and fine a way to get back there are many ways. I was confuse, mystified and astonish by my lawyer."

In a supplemental certification prepared after PCR counsel was appointed, defendant asserted he was unaware that the drug offense to which he pleaded guilty was an "aggravated felony," which would result in "mandatory deportation"; he alleged he believed deportation was only a possibility.

2. Although I told my attorney, prior to the plea, that I was not a U.S. Citizen, I was never told that the crime that I was pleading guilty to was considered an aggravated felony under federal immigration law. I was never told that a guilty plea to this drug offense would result in my mandatory deportation. Had I been told this, I never would have entered the plea, but rather I would have gone to trial.

3. When I appeared before [the] Judge . . . I was never told that deportation was mandatory. I was told that this was something that may happen to me and that it was a possibility. I was told by the Court that they were not responsible for immigration, but were going to give me

8

probation so that I could fight to stay in the country.

4.   I have now learned that deportation for a guilty to distribution of a controlled dangerous substance means that my deportation is mandatory.

[5.] During my conversation with the Court and with trial counsel I was told that my sentence would be three years of probation with time served in the county jail as a condition of that probation. Based on these statements, I believed that I could oppose my deportation. However, I now realize this is untrue.

The court heard oral argument on defendant's petition in April 2014. Defendant's PCR counsel argued that defendant "should have been told, under no uncertain terms, that [his] deportation was an absolute certainty"; and trial counsel's failure to advise him that deportation was mandatory constituted ineffective assistance of counsel.

The court denied defendant's petition without an evidentiary hearing. The PCR judge found that defendant had been properly advised of the potential immigration consequences of his plea in accordance with Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). Consequently, defendant failed to make a prima facie showing of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The judge explained:

[D]uring the plea . . . colloquy I read to him all of Question 17 of the plea form. He responded that he was aware of the possibility of . . . immigration consequences, and that even though he would be given the opportunity to speak with an independent immigration attorney he chose not to do so . . . .

So, the colloquy in the transcripts show that I go over all the questions in the plea form, trial counsel then supplements the record and talks to the defendant relative to the third[-]degree possession charge, and that it was a deportable offense. Trial counsel also explains to the defendant that the third[-]degree endangering was very likely a deportable offense, but wasn't certain. But this is not Padilla nor [State v. Nunez-Valdez, 200 N.J. 129 (2009)] where the defendant was actually told that his guilty plea would have no immigration consequences, or told that his deportation was only a possibility. He was unequivocally informed that the third[-]degree possession charge was deportable.

. . . .

[B]ased on the submissions of the parties my analysis of the applicable case law, the guilty plea, the sentencing transcripts, I can't find ineffective assistance of counsel as articulated in Strickland v. Washington.

This appeal followed. Defendant presents the following argument for our review:

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO INFORM HIM OF THE MANDATORY DEPORTATION CONSEQUENCES OF HIS PLEA.

10                                              A-5695-13T4

We defer to trial court's factual findings made after an evidentiary hearing on a petition for PCR. State v. Nash, 212 N.J. 518, 540 (2013). However, where, as here, no evidentiary hearing was conducted, we may review the factual inferences the court has drawn from the documentary record de novo. State v. Harris, 181 N.J. 391, 420-21 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005); State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014). We also review de novo the court's conclusions of law. Harris, supra, 181 N.J. at 420. Thus, it is within this court's authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421.

We recognize that for a non-citizen defendant, "[p]reserving the . . . right to remain in the United States may be more important . . . than any potential jail sentence." Padilla, supra, 559 U.S. at 368, 130 S. Ct. at 1483, 176 L. Ed. 2d at 295 (quoting INS v. St. Cyr, 533 U.S. 289, 322, 121 S. Ct. 2271, 2271, 150 L. Ed. 2d 347, 347 (2001)). Defendant entered his plea on June 29, 2012. Therefore, his counsel was obliged to comply with the standard of practice established in Padilla, which was given prospective effect. Chaidez v. United States,

___ U.S. ___, ___, 133 S. Ct. 1103, 1107, 185 L. Ed. 2d 149, 155 (2013); Gaitan, supra, 209 N.J. at 372-73.

To provide effective assistance of counsel, post-Padilla, a defense attorney is required to address, in some manner, the risk of immigration consequences of a non-citizen defendant's guilty plea. Padilla, supra, 559 U.S. at 367, 130 S. Ct. at 1482, 176 L. Ed. 2d at 294 ("The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation."). The Court recognized that immigration law is often complex, and the consequences of a conviction are often far from clear. Id. at 369, 130 S. Ct. at 1483, 176 L. Ed. 2d at 295-96. Thus, the specificity and definiteness of counsel's required advice varies with the clarity of the immigration law itself. Ibid.; Gaitan, supra, 209 N.J. at 380 ("[A]ttorneys now have specific duties as to how they must advise pleading noncitizen criminal defendants, depending on the certainty of immigration consequences flowing from the plea.").

In the "numerous situations in which the deportation consequences of a particular plea are unclear . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Padilla, supra, 559 U.S. at 369, 130

S. Ct. 1483, 176 L. Ed. 2d at 296.  However, where the "terms of the relevant immigration statute are succinct, clear and explicit in defining the removal consequence," then an attorney is obliged to be "equally clear."  Id. at 368-69, 130 S. Ct. at 1483, 176 L. Ed. 2d at 295-96.

In Padilla, the defendant, a lawful permanent resident, pleaded guilty to transporting a large quantity of marijuana. Id. at 359, 130 S. Ct. at 1477-78, 176 L. Ed. 2d at 289-90.  The Court held that the immigration consequences of a drug offense described in 8 U.S.C.A. § 1227(a)(2)(B)(i)[2] "commands removal." Id. at 368, 130 S. Ct. at 1483, 176 L. Ed. 2d at 295.  In other words, deportation is "presumptively mandatory."  Ibid.  Because the deportation consequence was "truly clear," the attorney was obliged to give advice that was equally clear.  Id. at 369, 130 S. Ct. at 1483, 176 L. Ed. 2d at 296.

Our State Supreme Court has interpreted Padilla to require an attorney "to point out to a noncitizen client that he or she is pleading to a mandatorily removable offense . . . ."  Gaitan, supra, 209 N.J. at 380.  The failure to do so constitutes

---

[2] "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."

"deficient performance of counsel." Ibid. However, "even if removal is not 'mandated' in the sense that a state offense is not identified on published lists of offenses equating to aggravated felonies or like mandatorily removable offenses, counsel must highlight for noncitizen clients that entering a guilty plea will place them at risk of removal . . . ." Id. at 381. Counsel must also advise clients to seek immigration counseling. Ibid.

Defendant argues that his counsel was not specific enough in describing the potential for removal after his convictions. Defendant alleges in his second certification that counsel never told him that he pleaded to an aggravated felony under federal immigration law; and that "a guilty plea to this drug offense would result in . . . mandatory deportation." He argues his counsel was required to inform him that "deportation was presumptively mandatory." Had counsel done so, defendant asserts he would have gone to trial, rather than plead guilty.

Counsel also highlights the trial judge's references to defendant's intention to "fight to stay in this country" and his statement that if ICE released defendant, he needed to report to probation. Defendant also refers to the wording of question 17, which states that the plea "may result in . . . removal." Pointing to statements made at the plea hearing, and in the plea

14 <span>A-5695-13T4</span>

form, he argues he was misled to believe he might not be deported.

We are unconvinced that defendant has presented a prima facie case of ineffective assistance of counsel. First, defendant places undue weight on the statements of the trial judge to establish that his plea counsel provided ineffective assistance. The judge's statements may not be imputed to counsel. The judge is obliged to ascertain that a plea is entered voluntarily, without threats or promises outside the record, "with an understanding of the nature of the charge and the consequences of the plea." R. 3:9-2. That obligation is related to, but distinct from the attorney's obligation to render effective assistance. Cf. State v. Jamgochian, 363 N.J. Super. 220, 227 (App. Div. 2003) (stating trial judge is not obliged to disclose "all the details" to assure defendant is aware he would be subject to community supervision for life as a consequence of his plea, "but the court should at least assure itself that defense counsel has discussed the matter with his client and defendant understands . . . .").

The judge in this case adhered to the plea form adopted by our Court.[3] While the form states that a plea "may result in

---

[3] Shortly after Nunez-Valdez, supra, 200 N.J. 129, was decided, the plea form reflected an attempt to distinguish between
(continued)

. . . removal," the form accounts for those cases where removal is virtually inevitable by informing a defendant that he may seek "individualized advice from an attorney" about the immigration consequences of his plea, and further inquiring about whether defendant has in fact received such individualized advice.[4]

Second, focusing on defendant's claims with respect to his counsel's obligations, defendant has not presented a prima facie case that his attorney failed to comply with the standard set in Padilla, as interpreted in Gaitan.  Defendant pleaded guilty to a drug offense, which presented the same clear consequences as those presented in Padilla.  In his initial pro se petition,

---

(continued)
convictions that may, and convictions that will, subject a defendant to removal.  The form asked, "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty?" and "Do you understand that if your plea of guilty is to a crime considered an 'aggravated felony' under federal law you will be subject to deportation/removal?"  See Administrative Directive #08-09, "Criminal Plea Forms — Amendments to Two Forms" (Sept. 4, 2009), http://www.judiciary.state.nj.us/directive/2009/dir_08-09.pdf. The Court subsequently revised the form, and adopted the version utilized in defendant's plea.

[4] We do not address here whether, and to what extent, a judge is obliged to engage in a colloquy beyond that dictated in the plea form.  The issue is not directly raised by a petition based on counsel's alleged ineffectiveness.  Also, although defendant contends he was misled by the judge's reference to fighting removal, defendant acknowledges that he did "fight" for a stay of his deportation, and succeeded in some measure.

16                                      A-5695-13T4

defendant acknowledged that his attorney told him to "go to Immigration[,] get [d]eported back to Jamaica," and then explore the "many ways to get back to the United States." (Emphasis added). These statements belie the assertions made in his supplemental certification that his attorney never told him he was subject to "mandatory deportation," or that removal was "presumptively mandatory," regardless of whether those precise words were used.[5] Whether or not defense counsel described defendant's crime as an "aggravated felony,"[6] it is clear, based on defendant's admissions in his initial petition, that counsel deemed defendant's deportation inevitable and unavoidable and advised defendant accordingly. Furthermore, the plea form and plea colloquy left no doubt that defendant would be taken into the custody of immigration officials immediately after sentencing.

---

[5] We do not address defendant's potential for re-entry, as he has not raised the issue.

[6] Under 8 U.S.C.A. § 1227(a)(2)(A)(iii), a non-citizen "is deportable" if he commits an "aggravated felony." "Aggravated felony" is defined to include numerous categories of offenses, 8 U.S.C.A. § 1101(a)(43), which sometimes makes it difficult to determine whether a State-defined crime falls within the federally-defined category. However, as noted in Padilla, little uncertainty surrounds the determination whether a defendant is deportable if he has committed a drug offense, because federal law separately provides that a non-citizen "is deportable" if convicted of a controlled substance offense other than a single offense involving personal possession of thirty grams or less of marijuana. 8 U.S.C.A. § 1227(a)(2)(B)(i).

We therefore view defendant's allegation in his second certification that he was unaware he was eligible for "mandatory deportation" to be a "bare assertion . . . insufficient to support a prima facie case of ineffectiveness." State v. Cummings, 321 N.J. Super. 154, 171 (App. Div.), certif. denied, 162 N.J. 199 (1999). Defendant may not create a genuine issue of fact, warranting an evidentiary hearing, by contradicting his prior statements without explanation. Cf. Shelcusky v. Garjulio, 172 N.J. 185, 201-02 (2002) (discussing the "sham affidavit" doctrine).

Third, we reject defendant's suggestion that a defense attorney must use "magic words" — "mandatory deportation" or "presumptively mandatory deportation" — to fulfill his obligation to provide effective assistance to a non-citizen client. The Court in Padilla used various turns of phrase to convey that once federal officials commence removal proceedings against a non-citizen convicted of a deportable offense, the prospects for defeating removal under the immigration statutes are slim:

> The "drastic measure" of deportation or
> removal . . . is now virtually inevitable
> for a vast number of noncitizens convicted
> of crimes.
>
> . . . .

A-5695-13T4

Under contemporary law, if a noncitizen has committed a removable offense after the 1996 effective date of these amendments, his removal is <u>practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses</u>.

. . . .

And, importantly, recent changes in our immigration law have made removal <u>nearly an automatic result</u> for a broad class of noncitizen offenders.

. . . .

Padilla's counsel could have easily determined that his plea would <u>make him eligible for deportation</u> simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically <u>commands removal</u> for all controlled substances convictions except for the most trivial of marijuana possession offenses . . . . The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was <u>presumptively mandatory</u> and his counsel's advice was incorrect.

. . . .

To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries <u>a risk of deportation</u>.

[<u>Padilla</u>, <u>supra</u>, 559 <u>U.S.</u> at 360-74, 130 <u>S. Ct.</u> at 1478-86, 176 <u>L. Ed.</u> 2d at 290-99 (emphasis added).]

Our Court held in <u>Gaitan</u> that, post-<u>Padilla</u>,

> [C]ounsel's failure to point out to a noncitizen client that he or she is pleading to a <u>mandatorily removable offense</u> will be viewed as deficient performance of counsel; affirmative advice must be conveyed as part of the counseling provided when a client enters a guilty plea to a state offense that equates to an aggravated felony, <u>triggering eligibility for mandated removal</u>.
>
> [<u>Gaitan</u>, <u>supra</u>, 209 <u>N.J.</u> at 380 (emphasis added).]

None of these formulations impose a duty to advise a client that removal is a certainty, even if the client's offense makes him clearly "deportable" under federal law for committing a controlled substance offense under 8 <u>U.S.C.A.</u> § 1227(a)(2)(B)(i).

Although there are precious few grounds to contest or secure relief from a conviction of a crime that is clearly deportable, such as many CDS offenses, the likelihood of actual removal also depends on the enforcement discretion of federal immigration officials. <u>See</u> <u>State v. Brewster</u>, 429 <u>N.J. Super.</u> 387, 396 (App. Div. 2013) (noting that the defendant, convicted of a mandatorily removable CDS offense, "remained undisturbed by federal immigration officials for almost twelve years" after his 1998 conviction). The Department of Homeland Security's enforcement priorities have also evolved over the years. <u>See, e.g.</u>, Dep't of Homeland Sec., Memorandum, <u>Policies for the Apprehension, Detention and Removal of Undocumented Immigrants</u>

(Nov. 20, 2014), http://www.dhs.gov/sites/default/files/publica-tions/14_1120_memo_prosecutorial_discretion.pdf (prioritizing removal of, among others, persons convicted of felonies and aggravated felonies "unless they qualify for asylum or another form of legal relief," or, "there are compelling and exceptional factors that clearly indicate the alien is not a threat to national security, border security, or public safety and should not therefore be an enforcement priority.").

We recognize that an attorney may fail to provide effective assistance if he or she minimizes the risk of removal, and thereby misleads a client.[7] On the one hand, an attorney must advise a client convicted of clearly deportable offenses, such as CDS offenses, that if enforcement is commenced, the client faces virtually inevitable removal, although the manner of conveying that fact is as variable as the English language. On the other hand, where the law is "highly complex and not capable of being reduced to any clear, succinct, or certain answer," an attorney may fulfill his duty by conveying to his client that the immigration consequences of his plea are uncertain. State v. Telford, 420 N.J. Super. 465, 468-70 (App. Div. 2011)

---

[7] Likewise, under certain circumstances, an attorney may exaggerate the risks of removal to the detriment of a client who would forego an otherwise attractive plea offer.

(applying <u>Padilla</u> standard), <u>certif. denied</u>, 209 <u>N.J.</u> 595 (2012).

A court must review an attorney's advice in its totality to determine whether he has fulfilled his duty to convey the immigration consequences of a plea, taking into account the clarity, or lack thereof, of the immigration law itself. Taking one statement or phrase in isolation can provide a distorted picture of an attorney's advice.[8] Under the circumstances of this case, particularly in light of defendant's admissions in his initial certification, we find no basis to conclude that defense counsel depreciated defendant's risk of removal, misled

---

[8] Other courts have grappled with the issue of what language is sufficient to fulfill an attorney's obligation where the offense is clearly deportable. <u>See, e.g.</u>, <u>Popoca-Garcia v. State</u>, 334 <u>P.</u>3d 824, 826 n.1, 824-28 (Idaho 2014) (highlighting divergent views of various state courts regarding the acceptability of such terms as "likelihood," "possibility," "very likely," and "eligible for deportation" to describe the risks of removal, and affirming trial court finding that defendant knew he "would be deported" when counsel told him "immigration officials 'could' deport him and that they 'most likely would.'"); <u>compare</u> <u>Commonwealth v. DeJesus</u>, 9 <u>N.E.</u>3d 789 (Mass. 2014) (telling defendant he was "eligible for deportation" and would "face deportation" held to be inadequate) <u>with</u> <u>Neufville v. State</u>, 13 <u>A.</u>3d 607, 614 (R.I. 2011) ("Counsel is not required to inform their clients that they <u>will</u> be deported, but rather that a defendant's 'plea would make [the defendant] <u>eligible</u> for deportation.'") (emphasis added) (quoting <u>Padilla</u>, <u>supra</u>, 559 <u>U.S.</u> at 368, 130 <u>S. Ct.</u> at 1483, 176 <u>L. Ed.</u> 2d at 295). We need not enter that thicket, given our view of the totality of circumstances here.

defendant, or otherwise failed to advise him in accordance with the standards set forth in Padilla and Gaitan.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION