**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2257-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JULIO A. ROSARIO, a/k/a
JULIO SANTOS,

     Defendant-Appellant.

_____

> Submitted January 15, 2019 – Decided January 31, 2019
>
> Before Judges Fisher and Geiger.
>
> On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 11-09-1603.
>
> Parsekian & Solomon, PC, attorneys for appellant (Melvin R. Solomon, on the brief).
>
> Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (Ian C. Kennedy, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief; John J. Scaliti, Legal Assistant, on the brief).

PER CURIAM

Defendant Julio A. Rosario appeals from a December 8, 2017 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. For the following reasons, we reverse and remand for an evidentiary hearing.

I.

On June 11, 2011, defendant brandished a kitchen knife while attempting to rob three customers of a pizzeria of their cellular phones. A grand jury indicted him for first-degree robbery, N.J.S.A. 2C:15-l; third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

Defendant is not a citizen of the United States. He is a native and citizen of the Dominican Republic. Defendant was admitted to the United States in 1983 as a legal permanent resident. He is now fifty-three years old. This was his first criminal offense.

Defendant is not fluent in English; an interpreter was used during his court appearances. Defendant asserts he has diminished mental capacity and suffers from severe mental illness. He dropped out of school after the eighth grade.

Defendant was found incompetent to stand trial in July 2012. An April 2013 reevaluation found him competent to stand trial. The reevaluation report

states defendant was diagnosed with Schizoaffective Disorder, depressed type and was treated with antipsychotic and antidepressant medications.[1]

On July 7, 2014, defendant entered into a negotiated plea agreement, pleading guilty to an amended charge of second-degree robbery, N.J.S.A. 2C:15-l, in exchange for a recommendation he be sentenced as a third-degree offender to a three-year prison term under the No Early Release Act, N.J.S.A. 2C:43-7.2, and dismissal of the remaining charges.

On September 12, 2014, defendant was sentenced in accordance with the negotiated plea agreement. He did not file a direct appeal of his conviction or sentence. Because he had accrued 1045 days credit for time served, defendant was eligible for immediate release. Defendant was subsequently detained by Immigration and Customs Enforcement (ICE) because he is subject to mandatory deportation as a result of his robbery conviction, which constituted an aggravated felony under federal immigration law because he was sentenced to a term of imprisonment greater than one year. 8 U.S.C. §§ 1101(a)(43)(G), 1227(a)(2)(A)(iii).

---

[1] The report explains "[i]ndividuals with Schizoaffective Disorder have an impaired sense of reality. Symptoms may include: fixed, false beliefs (delusions), impaired sensory perceptions (hallucinations), bizarre affect, disorganized speech, disordered thought processes, and bizarre behavior."

A-2257-17T1

In July 2017, defendant moved to vacate his guilty plea or to modify his sentence from a three-year term to 364 days, claiming his guilty plea was not made knowingly, voluntarily, or intelligently because trial counsel did not explain the effect of pleading guilty to an aggravated felony or the probability of automatic deportation. In his supporting affidavit, defendant states: "At no time either before I entered the plea or at the time of the plea were the immigration consequences of the plea explained to me or was I told to speak to an attorney familiar with immigration law or given an opportunity to do so." He further states he was not aware of the "sharp difference in the immigration consequences of . . . accepting a three-year sentence or agreeing to a sentence of 364 days." He claims he did not understand a three-year sentence exposed him "to almost certain removal while a sentence of less than one year . . . would have no immigration consequences."

Defendant also addressed his responses to questions on the plea form:

> My response to these questions must be evaluated in light of my limited education and my mental capacity. It was never explained to me that the length of my sentence rather than the crime would affect my immigration status. In fact on the Plea Form which is attached as Exhibit D, several of the questions relating to the immigration consequences of the plea are not answered or overwritten. For example there is no reply to the question "Do you understand that if you are not a citizen of the United States, this guilty plea may result

4

in your removal from the United States and/or stop you from being able to legally enter or re-enter the United States." As to the question 17[e] as to whether or not I would like to speak to immigration attorney about the consequences of the plea there is no response as the circled "No" is crossed out.

Defendant contends he never received advice from an attorney familiar with the nuances of immigration law and the different sentencing alternatives available. He also emphasizes that the plea hearing judge did not tell him that he should speak to an immigration attorney before accepting the plea or that his deportation was virtually assured while a lesser sentence would have no immigration consequences.

Following oral argument, the PCR court issued a written opinion denying defendant's petition. This appeal followed.

Defendant argues:

> POINT I
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING AS HE WAS ENTITLED TO WITHDRAW HIS GUILTY PLEA ON THE BASIS OF RECEIVING INEFFECTIVE COUNSEL REGARDING THE IMMIGRATION CONSEQUENCES ARISING FROM HIS PLEA AGREEMENT.

A-2257-17T1

POINT II
IN ADDITION TO VACATING THE GUILTY PLEA, IN THE ALTERNATIVE, THE SENTENCE SHOULD BE MODIFIED TO THREE HUNDRED SIXTY FOUR (364) DAYS AS THE TRIAL COURT ERRED BY NOT RULING ON THE MOTION TO RE SENTENCE.

II.

Under the Sixth Amendment of the United States Constitution, a criminal defendant is guaranteed the effective assistance of legal counsel in his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish a deprivation of that right, a convicted defendant must satisfy the two-part test enunciated in Strickland by demonstrating that: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. Id. at 687; accord State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey).

When a guilty plea is involved, a defendant must satisfy two criteria to set aside the plea based on ineffective assistance of counsel. State v. Nunez-Valdez, 200 N.J. 129, 139 (2009). The defendant must demonstrate that "(i) counsel's assistance was not 'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have

insisted on going to trial.'" Ibid. (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)).

The "defendant satisfie[s] the prejudice prong of the ineffective-assistance-of-counsel analysis by showing that he would not have pled guilty but for inaccurate information from counsel concerning the deportation consequences of his plea." Nunez-Valdez, 200 N.J. at 143. Counsel's duty is not limited to avoiding false or misleading information. The prejudice prong is also satisfied if counsel fails to inform a defendant entering a guilty plea of the relevant law pertaining to mandatory deportation. Padilla v. Kentucky, 559 U.S. 356, 369 (2010).[2]

If "the law is not succinct and straightforward," then counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Ibid. "However, where the 'terms of the relevant immigration statute are succinct, clear and explicit in defining the removal consequence,' then an attorney is obliged to be 'equally clear.'" State v. Blake, 444 N.J. Super. 285, 295 (App. Div. 2016) (quoting Padilla, 559 U.S. at 368-69). Consequently, "an attorney's failure to advise a noncitizen

---

[2] The PCR court erred by not applying the standard adopted in Padilla even though the plea hearing occurred several years after the decision in Padilla was issued.

client that a guilty plea will lead to mandatory deportation deprives the client of the effective assistance of counsel guaranteed by the Sixth Amendment." State v. Barros, 425 N.J. Super. 329, 331 (App. Div. 2012) (citing Padilla, 559 U.S. at 369); see also State v. Gaitan, 209 N.J. 339, 380, (2012) (noting criminal defense counsel must "point out to a noncitizen client that he or she is pleading to a mandatorily removable offense"). Counsel must also instruct clients to seek immigration counseling. Gaitan, 209 N.J. at 381.

Here, defendant pleaded guilty to second-degree robbery and was sentenced to a three-year prison term. The immigration consequences of this aggravated felony conviction mandate removal. Because the deportation consequences are truly clear, defendant's attorney was obliged to provide advice that was equally clear. Other than defendant's affidavit, the record before us does not indicate what, if any, advice counsel gave defendant regarding the mandatory deportation consequences of his plea, or whether counsel instructed defendant to seek immigration counseling.

Although we recognize the colloquy between the court and defendant at the plea hearing briefly addressed the immigration consequences of his plea, the colloquy was not a sufficient substitute for appropriate advice from defendant's

counsel, especially given his mental health issues, alleged diminished mental capacity, limited education, and need for an interpreter.

Thus, an evidentiary hearing is necessary to determine: (1) the advice given by defense counsel, or the lack thereof, regarding the immigration consequences of the plea; (2) whether any potential misadvice was clarified by the exchange with the court during the plea colloquy, such that defendant understood the immigration consequences of his plea; and (3) whether counsel instructed defendant to seek immigration counseling. Accordingly, we reverse and remand for an evidentiary hearing.

Following the evidentiary hearing, the Law Division judge shall make findings and conclusions regarding each of these issues and determine if counsel was ineffective.

In light of our ruling, we do not reach Point II regarding the denial of defendant's application to modify his sentence to 364 days.

Reversed and remanded for an evidentiary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION