**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3962-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMES D. DIXON, a/k/a
JAMES DEAN, DANE DIXON,
DARRIN DIXON, and JAMES
ROGERS,

     Defendant-Appellant.

_____

Submitted September 22, 2020 – Decided September 29, 2020

Before Judges Fisher and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 10-03-0358.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals the denial of his petition for post-conviction relief (PCR), in which he argued an ineffective-assistance-of-counsel claim. Defendant contends that his former attorney knew or should have known from medical records that testimony regarding causation of the victim's injuries would be presented at trial. He faults his former attorney for failing to advise him of that anticipated testimony and contends that had he known about that anticipated testimony, he would have accepted the State's plea offer. The PCR court concluded after an evidentiary hearing that defendant had failed to establish that his former counsel's performance was deficient. We agree and affirm.

To obtain relief on ineffective-assistance-of-counsel grounds, a defendant must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987). To satisfy those two prongs, a defendant "must prove an objectively deficient performance by defense counsel" and that the deficiency so prejudiced the defense that "it is reasonably probable that the result would be altered." State v. Allegro, 193 N.J. 352, 366 (2006).

A defendant's right to effective assistance of counsel extends to the plea-negotiation process. Lafler v. Cooper, 566 U.S. 156, 162 (2012); see also id. at

168 (finding that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it"). "Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." Von Moltke v. Gilles, 332 U.S. 708, 721 (1948).

A defendant may show prejudice as a result of ineffective assistance at the plea stage "if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." Lafler, 566 U.S. at 168. As to the first Strickland prong, an "erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." Id. at 174. As to the second Strickland prong, a defendant claiming ineffective assistance at the plea stage must show that "the outcome of the plea process would have been different with competent advice." Id. at 163. When a defendant claims that ineffective advice led him to reject a plea, the defendant must show a reasonable probability that but for that advice (i) he would have accepted the plea, (ii) the court would have found the plea acceptable; and (iii) the result would have been less severe than the judgment and sentence actually imposed. Id. at 164.

3 A-3962-18T4

We defer to a "trial court's factual findings made after an evidentiary hearing on a petition for PCR," State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016), unless the findings are not supported by adequate, substantial and credible evidence, State v. Harris, 181 N.J. 391, 415 (2002). We "review de novo the court's conclusions of law." Blake, 444 N.J. Super. at 294.

Defendant entered the victim's home to commit a burglary. The victim was descending a set of stairs when he first saw defendant. According to defendant, the victim on seeing defendant turned to run back up the stairs and fell. While the victim was down on the stairs, defendant took his wallet. Defendant denied that he had hit the victim and asserted that the victim was injured in the fall. The victim did not remember being assaulted and did not know how he was injured. He recalled entering his kitchen; he next remembered being in the hospital. Hospital records contained descriptions, which had been provided by police and EMS personnel, of the victim as someone who had been "assaulted" and "attacked by a stranger in his house."

Defendant ultimately was charged with first-degree robbery, second-degree burglary, second-degree aggravated assault, and other charges. Defendant initially was represented by an assistant public defender. She obtained discovery, which included the victim's hospital records, and provided

A-3962-18T4

defendant with a copy. According to defendant, he read part, but not all, of that discovery and did not discuss it with either the assistant public defender or the attorney who represented him during the final plea negotiations and trial.

Before trial, the State tendered to defendant an offer to resolve the case with a guilty plea to a first-degree crime and a ten-year term of imprisonment with an eighty-five percent parole bar.[1] At the pre-trial conference, defendant rejected the State's offer, but indicated that he would accept a plea offer that included a sentence of a five-year term of imprisonment with an eighty-five percent parole bar. The State rejected that proposed term at the pre-trial conference. Defendant subsequently waived his right to a jury trial and proceeded to trial.

During the bench trial, which took place in 2010, the State called as a fact witness the physician who had treated the victim after he had been brought by police and EMS personnel to the hospital emergency room. She initially described the victim as having been "assaulted in his home." Defense counsel objected to that testimony, claiming it was speculative and was not based on the

---

[1] Earlier in the case, while defendant was represented by the assistant public defender, the State offered a resolution involving a guilty plea and a ten-year imprisonment term with a five-year parole bar. When defendant indicated that he would accept it, the State advised the assistant public defender that it was no longer willing to offer that plea.

A-3962-18T4

doctor's personal knowledge. The State contended that the doctor was testifying "as to the information she was provided in terms of her treatment," and the court overruled the objection. The physician confirmed that the description of the victim as having been assaulted in his house was "per the information provided by the police and the EMS . . . ." She testified about the victim's injuries and opined that they were caused by "blunt force trauma," most likely by someone "fisting" the victim in the face or head. She based that conclusion on the existence of a "depression" over one of the victim's facial fractures, which was shown on an MRI. According to the physician, that depression "cannot come from falling. That has to come from . . . somebody hitting you." The physician also testified that it was possible to sustain a similar injury by falling and hitting the edge of a stair.

At the conclusion of the trial, the court rejected defendant's denial that he had assaulted the victim and convicted him, along with other crimes, of burglary and robbery in the second degree. The court did not base its decision on the description provided by police officers to the treating physician that the victim had been "assaulted," but on the physician's testimony regarding the victim's injuries, the "depression," and her opinion as to their likely cause.

6

In his PCR petition, defendant argued, among other things, that his rejection of a plea offer was the result of ineffective assistance of counsel, claiming that his attorney had advised him that the State would be "unable to prove that [he] caused injury to the victim . . . because, the evidence showed that the victim most likely fell on his own as the defendant had stated and, the victim's apparent memory loss made it unlikely that the State would be able to establish that crime . . . ."

The PCR court denied that petition. On appeal, we remanded to the PCR court, directing the court to address fully defendant's claim of ineffective assistance. The PCR court again denied the petition. Defendant appealed that denial. In a 2017 opinion, we found that defendant had made an adequate prima facie showing of inadequate assistance and that the court should have conducted an evidentiary hearing on that issue. We specifically questioned whether "defendant was aware of the content of the medical discovery" and "if the medical records revealed it was the doctor's opinion the victim's injuries were caused by a blow, the attorney knew or should have known the doctor might testify consistently with the content of those records." State v. Dixon, No. A-0418-15T1 (App. Div. Aug. 29, 2017) (slip op. at 6). We remanded for an evidentiary hearing.

At the evidentiary hearing, defendant testified, initially denying that his attorney had shown him or discussed with him the medical records and denying that his attorney had told him about the possibility that a doctor would testify in his case. Nevertheless, he stated that he understood from his former attorney that "the aggravated assault was a medical decision." He claimed that he "never knew" that a doctor had examined the victim when he was taken to the hospital. He testified that his attorney had given him "what he said the prosecutor gave him," but denied that he had the medical records. On cross-examination, defendant conceded that his first attorney had provided to him the discovery papers, that he had read some of them, and that the discovery papers included the victim's medical records. He denied discussing the discovery with either attorney. As to the plea discussions, defendant asserted that he had told his former attorney that he would accept the State's offer of a ten-year prison term, but contended that the State then raised the proposed sentence to a fifteen-year term, which defendant rejected.

Defendant's former attorney testified both before and after he had an opportunity to review the case file. After reviewing the case file, he testified that he was "sure" he had advised defendant that he could be convicted of the second-degree crimes, though he believed that he had a "good shot of beating"

them. He stated that it was his practice to "gauge" whether a client knows what is in his discovery file and to "discuss things in more detail" closer to trial. He could not recall if before defendant's trial, which took place approximately nine years before the evidentiary hearing, he had reviewed "every stitch of paper" with defendant. He acknowledged the description in the medical records of the victim as having been "assaulted," but expressed his belief, which was correct, that that description was given to the doctors by "police officers who assumed that [the victim] was struck." He testified that he would have been prepared to object to that testimony at trial, and that he did, but the court overruled his objection. He did not recall that defendant ever told him he would accept a plea offer that included a ten-year term of imprisonment with an eighty-five percent parole bar.

Having witnessed and considered the testimony of defendant and his former attorney, the court concluded that defendant had failed to establish by a preponderance of the evidence that he was unaware of the contents of the medical records. The court determined that defense counsel had been prepared to object to the doctor's testimony and that defendant was not surprised by the presentation of medical testimony. The court noted that defense counsel had acknowledged there was a chance defendant could be convicted of a second-

9                                                                        A-3962-18T4

degree crime. The court also found defendant's testimony that he would have avoided a trial by accepting a ten-year plea offer made at the time of trial lacking in credibility; the court determined that at the time of trial the State had rescinded the ten-year plea offer made at the pre-trial conference and increased the proposed imprisonment term to fifteen years. The court concluded that defendant had failed to prove that his former attorney's advice was ineffective and denied his petition.

Defendant appeals, arguing that his convictions must be reversed because his trial counsel was ineffective during the plea-bargaining phase of his case. As to the first prong of his ineffective-assistance claim, defendant contends that (i) his former attorney knew or should have known from medical records that at trial the State would present testimony that the cause of the victims' injuries was assault; and (ii) he failed to advise defendant of the contents of the medical records. As to the second prong, defendant claims that had he been aware of the contents of the medical records and the possibility that the State could present evidence of assault, he would have accepted a ten-year plea offer and avoided the trial and resulting conviction and sentence.

Having had an opportunity to assess the credibility of defendant and his former attorney, the PCR court found that defendant had failed to establish by a

preponderance of the evidence that he was unaware of the contents of the medical records. As a result of that finding, the court concluded that defendant had failed to demonstrate that his former counsel's assistance was deficient and, thus, had failed to establish the first prong of his ineffective-assistance claim. The court also rejected defendant's testimony that he could have and would have avoided a trial by accepting a ten-year plea offer and, thus, had failed to establish the second prong of his claim. The court's credibility assessments and factual findings are entitled to our deference, and we find no reason to disturb them.

With its decision, the PCR court resolved defendant's ineffective-assistance claim and directly addressed the first question we raised in our 2017 decision: whether "defendant was aware of the content of the medical discovery." Having answered our first question affirmatively, the court did not address and did not need to address the second question raised in our 2017 decision: whether "the medical records revealed it was the doctor's opinion the victim's injuries were caused by a blow, [and] the attorney knew or should have known the doctor might testify consistently with the content of those records." We take this opportunity to comment briefly on that issue.

The record is clear that the police and EMS personnel told the hospital staff that the victim had been "assaulted" and had been "attacked by a stranger

in his house" and that the hospital records included that description. The treating physician confirmed in her trial testimony that that description was provided by the police and EMS personnel.

That law-enforcement description is not an expert medical opinion about causation of the victim's injuries. Nothing in the record establishes that the hospital records contained a medical opinion that the victim's injuries were caused by "blunt force trauma" from a "fisting." During the evidentiary hearing on defendant's PCR petition, defense counsel marked and questioned defendant's prior counsel about only two reports from the victim's hospital records. One report contained a description of the victim as having "presented to the Emergency Room yesterday after he was assaulted"; the other report contained a description of him as having been "attacked by a stranger in his house." He did not present to the court any hospital record that contained a medical opinion that the victim's injuries were caused by "blunt force trauma" from someone "fisting" the victim. Surely, if the medical records contained that medical opinion, defense counsel would have presented it to the court and questioned defendant's former attorney about it during the evidentiary hearing.

Defendant did not prove the medical records revealed that it was the doctor's opinion that the victim's injuries were caused by a blow. Defendant did

A-3962-18T4

not establish that his former attorney knew or should have known that a treating physician called as a fact witness would opine at trial that the victim's injuries were caused by "blunt force trauma" from a "fisting." And it was that testimony – her testimony about the existence of a "depression" over one of the victim's facial fractures and about how that type of depression does not come from a fall, but "from somebody hitting you" – not her repetition of the law-enforcement description of the victim that led the trial court to convict defendant on a second-degree charge.

Having failed to prove that his former attorney's performance was deficient, defendant is not entitled to the relief he seeks.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3962-18T4