# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2905-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

K.D.C.,

    Defendant-Appellant.

_____

> Submitted May 18, 2022 – Decided June 15, 2022
>
> Before Judges Hoffman and Geiger.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment Nos. 15-09-1224 and 16-04-0547.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodestra, Designated Counsel, on the brief).
>
> Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant appeals from the June 9, 2021 Law Division order denying his petition for post-conviction relief (PCR).  After reviewing the record, we affirm.

## I.

We glean the following facts from the record.  In 2015, defendant resided in an apartment he shared with L.G.,[1] who rented the three-bedroom apartment on the lower floor of a two-story duplex on Grant Avenue in Jersey City.  On February 19, 2015, Lieutenant Honey Spirito of the Special Victims Unit (SVU) of the Hudson County Prosecutor's Office received a referral from the Jersey City Police Department (JCPD).  According to the referral, J.C., defendant's girlfriend, reported that she found "child pornography or pictures of [defendant] doing sexual acts to a child."  J.C. identified the child in the videos and photographs as the niece of defendant's roommate.  Specifically, she recounted watching a video on defendant's cell phone where defendant pulled the pants down on a child and "fondle[d] her buttocks"; in another video, she observed "the same child on a bed and [defendant] touching her vagina."  J.C. recognized defendant's bedroom as the setting of the videos and photographs, as well as defendant's hand appearing in the video.

---

[1]  We use initials to protect the identity of child victims of sexual assault and abuse.  R. 1:38-3(d)(11).

After receiving this referral, Lieutenant Spirito spoke with Detective Solte of the JCPD, and requested that he transport J.C. to her office for questioning. Detective Solte then learned that there were "two young children" in defendant's apartment; at that point, she requested that Detective Solte proceed to defendant's apartment and transport everyone living in the apartment to the SVU.[2] Lieutenant Spirito further advised Detective Solte to "secure" any cellular device on defendant's person, but not to search through the devices.

In the interim, Lieutenant Spirito planned to obtain a search warrant for defendant's home. J.C. and the two children went to the SVU for interviews. According to Lieutenant Spirito, she sent officers to defendant's home, before obtaining an arrest warrant, to assure the safety of the young children. Had there been no young children in the home, Lieutenant Spirito testified she would have interviewed J.C. before preparing an arrest warrant for defendant.

Sergeant Dino Nerney, one of four JCPD officers dispatched to defendant's apartment, testified that upon arriving, L.G. allowed them to enter. After entering the apartment, the officers informed defendant of the allegations

---

[2] According to Lieutenant Spirito, it is SVU protocol to transport to the SVU office the victims of a sexual assault case and any children living in a home where child sexual abuse is suspected.

of child pornography on his cell phone and asked him and L.G. to drive to the police station for questioning. They both agreed.

Sergeant Nerney testified that Officer Mark Shaver followed defendant to his bedroom, after defendant "asked if he can get some clothes." As defendant entered the bedroom, he attempted to close the door behind him; at that point, Officer Shaver prevented defendant from closing the door and handcuffed him. Defendant responded, "You need a search warrant. You can't come in here. And I wanna lawyer."

After defendant showed where the jacket was in the bedroom, Officer Shaver put the jacket on defendant, zippered up the jacket, and then patted defendant down, locating and removing a cell phone from the jacket pocket. Defendant requested the officers give his cell phone to L.G.; instead, they put it in an evidence bag.

Sergeant Nerney testified that he had Officer Shaver follow defendant to his bedroom because the room had not been checked. At that point,

> [w]e don't know if there's kids inside the room, if there's evidence in there, if there's a weapon in there, and we just wanted to make sure that we followed him, you know, to make sure that nothing could be discarded or destroyed. . . . [When defendant] stopped [Officer Shaver] from closing the door . . . he was taken into custody at that time.

4

Later that morning, Officer Mark Sojak obtained the passcode for defendant's cell phone from J.C.; however, he did not search the contents of the cell phone immediately. Officer Sojak accessed defendant's phone using the pattern lock, placed the phone in "airplane mode" and disabled the pattern lock. Officer Sojak explained that he wanted to "protect data on the phone" and "prevent anyone from remotely gaining access to the phone to delete any contents of evidentiary value."

Lieutenant Spirito eventually obtained a Communications Data Warrant (CDW) for defendant's cell phone. Upon executing the CDW, Lieutenant Spirito saw several photos corroborating J.C.'s concerns. Lieutenant Spirito then obtained an arrest warrant for defendant.

On September 2, 2015, a Hudson County grand jury returned an indictment charging defendant with three counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), three counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b), three counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), three counts of fourth-degree child abuse, N.J.S.A. 9:6-1 & 9:6-3, eight counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b), and one count of obstruction, N.J.S.A. 2C:29-1.

A-2905-20

Defendant moved to suppress the photo evidence obtained from his cell phone. The judge denied defendant's motion in an oral opinion, finding the officers went to defendant's home only to investigate, to secure the children, and to preserve evidence, not to search for evidence. Moreover, the judge found the police lawfully searched defendant and seized his cell phone incident to his arrest for obstruction.

On October 28, 2016, defendant pled guilty to two counts of first-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(3), one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4b(5)(a)(i), and one count of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4b. During the plea colloquy, defendant and the judge had the following exchange:

> Judge: Have you had enough time to speak with Miss Aldrich about these cases?
>
> Defendant: Yes.
>
> Judge: Has she answered all of your questions and reviewed the discovery with you?
>
> Defendant: Yes.
>
> Judge: Has anybody forced you, threatened you, promised you anything to make you plead guilty?
>
> Defendant: No. A lot of pressure, but nobody forced me.

A-2905-20

Judge: But it's a lot of pressure because it's a hard decision to make. But did anybody pressure you, force you, or threaten you to make a decision?

Defendant: No.

Judge: Okay. So the pressure came from yourself and the fact that this is a difficult thing, or did someone else pressure you?

Defendant: The pressure came from the whole situation.

Judge: Okay.

. . . .

Judge: It's just a stressful situation?

Defendant: Yes, it's stressful.

Judge: But nobody's pressured you, forced you, or threatened you to plead guilty?

Defendant: No. Nobody's forcing me to do anything.

On September 15, 2017, the court imposed an aggregate sentence of twenty-five years of imprisonment with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA).[3] The court sentenced defendant to fifteen years imprisonment for first-degree endangering

---

[3] In accordance with defendant's plea agreement, the court also subjected him to Megan's Law, N.J.S.A. 2C:7-1 to -23, and parole supervision for life.

the welfare of a child, consecutive to a ten-year sentence for first-degree endangering the welfare of a child, with both sentences subject to NERA.

On July 6, 2020, defendant filed a pro se petition for PCR. After hearing oral argument on defendant's petition, the PCR court denied defendant's petition on January 27, 2021. The PCR court found that when defendant's counsel used abbreviations when she assisted him with his plea form, she did not provide ineffective assistance. Finding no evidence that defendant plead guilty involuntarily, that he failed to understand the duration of his sentence during the plea hearing, or that he was confused, alarmed, or that he was somehow inadequately informed, the PCR court denied defendant's petition without an evidentiary hearing. This appeal followed, with defendant raising the following arguments:

> POINT I
>
> THE PCR COURT ERRED IN DENYING MR. CAMPBELL'S PETITION FOR POST-CONVICTION RELIEF WITHOUT GRANTING AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM PRIOR COUNSEL REGARDING HER FAILURE TO CALL THREE POLICE OFFICERS TO TESTIFY AT THE SUPPRESSION MOTION.
>
> POINT II
>
> THE PCR COURT ERRED IN DENYING MR. CAMPBELL'S PETITION FOR POST-CONVICTION

8

RELIEF WITHOUT AN EVIDENTIARY HEARING AS TESTIMONY IS NEEDED FROM PRIOR COUNSEL REGARDING WHY SHE PRESSURED MR. CAMPBELL TO PLEAD GUILTY AND FAILED TO EXPLAIN TO HIM THE TERMS OF HIS PLEA OFFER AND HIS SENTENCE EXPOSURE.

## II.

We begin our analysis by acknowledging the legal principles governing this appeal. When a PCR judge does not hold an evidentiary hearing, we review de novo both the PCR court's factual inferences from the record and its legal conclusions. State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).

A defendant is generally entitled to a PCR evidentiary hearing upon showing a prima facie claim of ineffective assistance of counsel. State v. Porter, 216 N.J. 343, 354 (2013). To establish a prima facie claim, the petitioner "must allege specific facts and evidence supporting his allegations." Id. at 355. In other words, "to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

In determining whether a defendant has established ineffective assistance of counsel, the claim must be evaluated under the two-prong Strickland[4] test,

---

[4] Strickland v. Washington, 466 U.S. 668 (1984).

where "a reviewing court must determine: (1) whether counsel's performance 'fell below an objective standard of reasonableness,'. . . and if so, (2) whether there exists a 'reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.'" State v. Castagna, 187 N.J. 293, 313-14 (2006) (quoting Strickland, 466 U.S. at 688, 694); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland test in New Jersey).

A defendant may satisfy the first prong of the Strickland test "by a showing that counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Allegro, 193 N.J. 352, 366 (2008) (quoting Castagna, 187 N.J. at 314). Moreover, the second prong requires defendant show that he was prejudiced by counsel's deficient representation. Fritz, 15 N.J. at 341-42 (explaining that the prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial."). Moreover, there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Complaints of matters relating to trial strategy will not establish a valid ineffective assistance claim. Fritz, 105 N.J. at 54 (quoting

10

State v. Williams, 39 N.J. 471, 489 (1963)).  Mere improvident strategy, mistakes or bad tactics do not amount to ineffective assistance.  State v. Bonet, 132 N.J. Super. 186, 191 (App. Div. 1975).

We first address defendant's contention that his counsel was ineffective by not calling Officers Solte, Graham, and Shaver as witnesses to testify at defendant's motion to suppress.  Deciding which witnesses to call is quintessential trial strategy, and therefore counsel's decision, even if "improvident," cannot sustain a claim for ineffective assistance.  Fritz, 105 N.J. at 54; see also Bonet, 132 N.J. Super. at 191.  Defendant provides no support for his contention.  Indeed, Lieutenant Spirito and Sergeant Nerney testified at defendant's motion to suppress.  Sergeant Nerney was present at defendant's apartment and testified to the events the lead to the officers' seizing of defendant's cell phone, which contained incriminating photos.  The record lacks any evidence suggesting that the testimony of these officers would dispute Sergeant Nerney's testimony.  Counsel's decision not to call the other three officers was therefore "objectively reasonable."  Castagna, 187 N.J. at 313-14 (2006) (quoting Strickland, 466 U.S. at 688, 694).  Defendant failed to establish a prima facie case of ineffective assistance of counsel.

Defendant also argues his counsel was ineffective by pressuring him to plead guilty and failing to explain his sentencing exposure adequately. We disagree. The plea colloquy establishes that defendant plead guilty because of "the situation," which caused him to feel pressure to plead guilty, not the actions or words of his counsel. Defendant's claim that his counsel pressure him into pleading guilty finds no credible support in the record. Accordingly, there is no support for defendant's argument that counsel's actions "outside the wide range of professionally competent assistance" caused defendant to plead guilty. Allegro, 193 N.J. at 366 (quoting Castagna, 187 N.J. at 314).

Defendant also claims he received ineffective assistance of counsel because he did not understand the terms "concurrent" and "consecutive," his counsel inappropriately used the abbreviations "c/c" and "c/s" on the plea form, and he did not understand he would receive a twenty-five-year sentence. The record does not support this argument. After having heard in detail the terms of the aggregate sentence, defendant stated that he understood those terms of the plea agreement. Additionally, defendant advised the plea judge that his counsel had answered all of his questions.

Defendant's claim that counsel failed to provide an explanation is nothing more than a bald assertion. As noted by the PCR court, the transcript of

12

defendant's plea hearing reflects that the court went through "painstaking efforts" to address the consecutive sentences and "the amount of years and the months and even the days" that defendant would have to serve before he was eligible for parole, for each sentence. Accordingly, defendant cannot tie his alleged misunderstanding of his sentence length to counsel's actions that fall "outside the wide range of professionally competent assistance." Ibid. (quoting Castagna, 187 N.J. at 314).

Counsel's usage of the abbreviations "c/c" and "c/s" to mean "concurrent" and "consecutive" was also not ineffective. Indeed, defendant acknowledged that counsel discussed his sentence with him. Further, the record provides no basis to find counsel's discussion with defendant regarding his sentencing exposure fell "outside the wide range of professionally competent assistance." Because defendant did not establish a prima facie claim of ineffective assistance of counsel, he was not entitled to an evidentiary hearing. R. 3:22-10(b).

Any arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2905-20