**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0873-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROGER D. COLEY,

    Defendant-Appellant.

_____

> Submitted April 29, 2020 – Decided June 23, 2020
>
> Before Judges Whipple and Gooden Brown.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment Nos. 10-10-1092 and 13-07-0726.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).
>
> Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Roger Coley appeals from the August 22, 2018 order denying his petition for post-conviction relief (PCR) after an evidentiary hearing. We previously set forth the facts in defendant's first PCR appeal in State v. Coley, No. A-0905-16 (App. Div. April 11, 2018), where we remanded for an evidentiary hearing to determine whether defense counsel provided false or misleading advice as to the impact defendant's United States born children would have on the likelihood of deportation and if so, whether the information caused defendant to plead guilty. After a review of the arguments in light of the record and applicable principles of law, we affirm.

On August 22, 2018, the parties appeared before the court for the remand hearing. Defendant, represented by counsel in the courtroom, appeared by way of an audiovisual phone call. Defendant's plea counsel, William Rohr, testified that although he had no independent recollection of defendant's case, he reviewed some notes he retained. Rohr's notes reflected he knew defendant was a U.S. resident from Jamaica who came on a six-month work permit, overstayed his visa and had an immigration detainer against him. Rohr testified it was his understanding that defendant was going to be deported for overstaying his visa. Rohr also testified the transcript of defendant's plea hearing reflected he

A-0873-18T1

discussed with defendant that he would be deported after completion of his prison sentence. Under questioning from the court, Rohr stated:

> I mean, taking into consideration the fact that my . . . perception at the time was he was going to get deported because he was undocumented. If you add to that the fact that he's now pleading guilty to three charges, that's going to enhance the potential for documentation. And I think I'd have to have some insight into immigration law in order to counteract and say regardless of the fact that . . . the immigration authority . . . has a detainer . . . against you and apparently want to deport you, that you should disregard that because there's always a potential that you may not be deported. That's not the kind of conversation I would have had with him. I would have had to have some sophistication in immigration law to think of something like that.
>
> THE COURT: So you never told him that he would not be deported?
>
> THE WITNESS: I . . . don't have any recollection of conversations with him. I'm just looking at the transcript here what I said and . . . I would have done knowing me.

Defendant testified that Rohr only told him deportation was a possibility, not that it was mandatory and that the criminal and immigration proceedings were "separate and apart." Defendant also testified that had he known deportation was mandatory, he would not have pled guilty but would have insisted on a trial.

A-0873-18T1

In an oral decision, delivered immediately after the hearing, the PCR court denied defendant's petition, finding defendant was advised he would be deported as a result of his guilty plea. Although the PCR court acknowledged that Rohr had no independent recollection of the case, and credited Rohr's testimony that he would not have told defendant that he would not be deported because of several factors in the case, Rohr highlighted the fact that defendant overstayed his immigration visa, had an immigration detainer placed upon him for deportation, and defendant's controlled dangerous substance (CDS) and CDS gun charges required deportation.

The Court also addressed whether Rohr provided false or misleading advice as to the impact defendant's children would have on the likelihood of deportation. The PCR court stated:

> Then we go into the area . . . of his children. And I believe that's what the Appellate Division is concerned about. Did Mr. Rohr ever say to the defendant, well, you have two children, maybe because of these children the [Immigration and Customs Enforcement] people or the Immigration Judge will take that into . . . account and not deport you. This is, I believe, what the Appellate Division wants to find out.
>
> That would be misadvice if Mr. Rohr did that. But Mr. Rohr doesn't recall. But when I was questioning Mr. Coley, when that topic came up, Mr. Rohr said, I can't do anything about it. See that explains the dichotomy why you have the separation. The

A-0873-18T1

separation is in terms of, yes, you're going to be deported and there's nothing we can do about it. If there's something that possibly can happen with the children, that's a whole different area I guess of immigration law. That's how I view this.

But, again, the Appellate Division is looking for misadvice. And to [use] Mr. Coley's own words, when it came to the impact of the two children, could that possibly be some type of means of avoiding deportation, Rohr said, no. I can't do anything about it. When Mr. Rohr was testifying as to collateral . . . consequences, in his mind he was saying that as far as he was concerned as an attorney, an attorney's job is not to give misadvice. I did not give misadvice.

And with respect to the question of, well, did you maybe tell him with the children, that would possibly change the picture? That's simply not in the case. [T]here's nothing for me to believe that Mr. Rohr ever told him anything like that. As I said before, Mr. Coley said, Mr. Rohr told me there's nothing I can do about.

So, again, I do not see misadvice here. And I'm going to again deny the defendant's application.

The court entered an order denying defendant's PCR petition. This appeal followed.

On appeal defendant argues:

POINT I: THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR [PCR] BECAUSE DEFENDANT ESTABLISHED PLEA COUNSEL MISADVISED HIM REGARDING HOW HIS UNITED STATES BORN CHILDREN WOULD

IMPACT THE IMMIGRATION CONSEQUENCES
OF HIS GUILTY PLEA.

"[PCR] is New Jersey's analogue to the federal writ of habeas corpus," State v. Preciose, 129 N.J. 451, 459 (1991), affording an adjudged criminal defendant a "last chance to challenge the 'fairness and reliability of a criminal verdict . . . .'" State v. Nash, 212 N.J. 518, 540 (2013) (citation omitted). A defendant must establish the right to PCR by a preponderance of the credible evidence. Preciose, 129 N.J. at 459. In order to satisfy this burden, the defendant "must do more than make bald assertions that he [or she] was denied the effective assistance of counsel. He [or she] must allege facts sufficient to demonstrate counsel's alleged substandard performance." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

"The Sixth Amendment of the United States Constitution and the New Jersey Constitution guarantee criminal defendant's the right to counsel, which right requires that defendants receive the 'effective assistance of counsel.'" State v. Gaitan, 209 N.J. 339, 349 (2012) (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)). To establish a claim for ineffective assistance, a defendant must satisfy a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

A-0873-18T1

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

[Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the standard in Strickland).]

In applying this test, "[a]ttorneys are held to a standard of 'reasonableness under prevailing professional norms.'" Gaitan 209 N.J. at 350 (quoting Strickland, 466 U.S. at 688). The attorney's performance is analyzed as of the time of the attorney's conduct. Ibid. In the context of illustrating prejudice after a guilty plea, a defendant must demonstrate "there is a reasonable probability that but for counsel's errors, [he or she] would not have plead guilty and would have insisted on going to trial." Id. at 351 (alteration in original) (quoting State v. Nunez-Valdez, 200 N.J. 129, 139 (2009)).

When a PCR court has taken the opportunity to make "factual findings based on its review of live witness testimony," we defer to the "court's findings that are supported by sufficient credible evidence in the record." Nash, 212 N.J.

A-0873-18T1

at 540 (citation omitted). However, we afford no deference to the court's legal conclusions, which we review de novo. Id. at 540-41.

When considering the plea agreements of non-citizen defendants, our courts have found ineffective assistance where plea counsel provided false or misleading information concerning the immigration consequences of a guilty plea, and the defendant would not have pled guilty had he or she been adequately informed. Nunez-Valdez, 200 N.J. at 138, 141-43. The United States Supreme Court, in Padilla v. Kentucky, 559 U.S. 356, 367-69 (2010), held that a constitutionally responsible attorney must inform his or her clients whether their plea carries a risk of deportation. Padilla created a "two-tiered analytical structure for assessing the duty of effective assistance [which] . . . distinguished cases where it is clear that deportation is certain, from cases where the immigration consequences of a plea are less clear . . . ." Gaitan, 209 N.J. at 356.

In situations where the deportation consequences are not straight forward, a defense attorney "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Padilla, 559 U.S. at 369. However, a counsel's "failure to point out to a noncitizen client that he or she is pleading to a mandatorily removable offense

[constitutes] deficient performance of counsel." State v. Blake, 444 N.J. Super. 285, 300 (App. Div. 2016) (emphasis omitted) (quoting Gaitan, 209 N.J. at 380).

Turning to the first prong of Strickland, the PCR court found defendant's plea counsel did not render deficient performance. Rohr was unable to recall the specific conversations he had with defendant and could only testify based on his notes and statements in the record and his assertion of what he would have done under the circumstances. Nonetheless, the PCR court found him "extremely credible." Upon review of the record, there is no basis to disturb the credibility finding of the PCR judge.

The PCR judge relied on substantial credible evidence in determining that Rohr did not provide false or misleading advice as to the impact defendant's U.S. born children would have on the likelihood of deportation. The credible evidence in the record included the fact that Rohr informed defendant on numerous occasions that he would be deported as a result of his guilty plea, and defendant insisted on going forward with the plea after the court offered to adjourn so defendant could confer with an immigration attorney. Moreover, although Rohr was unable to recall prior conversations with defendant, the PCR court found credible his testimony he would not have told defendant he may not be deported because defendant overstayed his immigration visa, had an

immigration detainer for overstaying a visa, and his charges required deportation. Although defendant testified to the contrary, we defer to the PCR judge's determination that plea counsel's testimony was credible and defendant was not. Nash, 212 N.J. at 540 ("Our standard of review is necessarily deferential to a PCR court's factual findings . . . . [W]e will uphold the PCR court's findings that are supported by sufficient credible evidence in the record.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0873-18T1