**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5662-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DONALD J. EBERT a/k/a
DONALD JOSEPH EBERT
and DONNY DON,

    Defendant-Appellant.

_____

Submitted October 14, 2020 – Decided December 11, 2020

Before Judges Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 13-08-0917.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven E. Braun, Designated Counsel, on the brief).

Robert J. Carroll, Acting Morris County Prosecutor, attorney for respondent (Paula Jordao, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Sentenced to an aggregate seven-year prison term with three years of parole ineligibility after pleading guilty to third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b),[1] defendant Donald J. Ebert appeals from the order denying his post-conviction relief (PCR) petition, arguing he is entitled to an evidentiary hearing because:

> POINT I
>
> TRIAL DEFENSE COUNSEL WAS INEFFECTIVE BY REFUSING TO REPRESENT DEFENDANT AT TRIAL, THEREBY DEPRIVING DEFENDANT OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE NEW JERSEY CONSTITUTION.
>
> POINT II
>
> SENTENCING COUNSEL WAS INEFFECTIVE FOR FAILING TO ARGUE REMORSE AS A MITIGATING FACTOR.

---

[1] We affirmed defendant's sentence on our excessive sentence oral argument calendar, remanding only for the correction of transposed sentences in the judgment of conviction. Our Supreme Court denied defendant's petition for certification. See State v. Ebert, 234 N.J. 16, 16 (2018).

A-5662-18T2

Reviewing the factual inferences drawn by the PCR judge from the record and its legal conclusions de novo because the court did not conduct an evidentiary hearing, see State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016), and determining defendant did not present a prima facie case of ineffective assistance of counsel, we affirm.

An evidentiary hearing should be held only if a defendant presents "a prima facie claim in support of [PCR]." State v. Preciose, 129 N.J. 451, 462 (1992); see also R. 3:22-10(b). In order to establish a prima facie case, "a defendant must demonstrate the reasonable likelihood of succeeding under the test set forth in Strickland [v. Washington, 466 U.S. 668 (1984).]"[2] Preciose, 129 N.J. at 463.

Merely raising a claim for PCR without more does not entitle a defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). But that is what defendant did in contending his trial counsel was

---

[2] To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 52. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58.

A-5662-18T2

ineffective for refusing to represent him at trial unless he was paid $25,000[3] in addition to the retainer in like amount already tendered, leaving defendant "with little choice but to accept the plea because of counsel's financial demands."  The record reveals defendant negotiated and freely accepted the plea offer even after the plea judge advised he need not accept it.

When defendant appeared on October 16, 2015, the case had not yet been placed on the trial list even though defendant had been indicted in August 2013, for:  first-degree attempted murder, N.J.S.A. 2C:5-1, 11-3(a)(1) (count one); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count two); third-degree aggravated assault, N.J.S.A. 2C:12-(1)(b)(2) (count three); fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-(1)(b)(4) (count four); second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-6(a) (count five); and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count six).  Defendant had countered the State's initial six-year, State-prison plea offer, subject to eighty-five-percent parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2, if defendant pleaded guilty to

---

[3] Defendant also claims trial counsel told him "he would need another $50,000 to go to trial."  We cannot reconcile this disparity because the record citations provided in defendant's merits brief correspond to the notice of appeal which does not support this or his other factual contentions about trial counsel's actions relative to this PCR.

first-degree attempted murder, with a five-year prison term with three years of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6. The State rejected the counteroffer. Trial counsel requested additional time before the case was placed on the trial calendar because he wanted to propose a seven-year term with three years of parole ineligibility to the State, but defendant had yet to authorize that counteroffer, as counsel and defendant "reached . . . an impasse" on that issue.

The plea judge briefly reviewed the facts of the case and defendant's sentencing exposure on the most serious charges, advising defendant that his counsel could not extend the counteroffer without his consent, but making clear he was "not telling [defendant he had] to do that or not do that at all." The judge then told defendant to discuss the matter with trial counsel and that he would "hold off on the pretrial memorandum" necessary to place the case on the trial calendar. See R. 3:9-1(f). The judge repeated that he wasn't telling defendant he had "to do that," and if defendant told him he wasn't authorizing plea counsel "to do anything like that" and wasn't "interested in that," he would indicate defendant had rejected the State's offer and place the case on the trial list for December 14.

Defendant told the plea judge he would like to discuss the counteroffer with counsel. The plea judge granted that request, advising defendant he could be found guilty or not guilty at trial and that he faced a lengthy mandatory sentence if found guilty. The judge added: "If you feel that you are innocent and you want a trial, then you should have a trial." Defendant returned and testified under oath that he authorized trial counsel to extend the counteroffer.

It took about one and three-quarters hours for the assistant prosecutor to obtain approval of the counteroffered plea agreement. When the parties returned to court later that afternoon, the judge, with completed plea forms in hand, asked defendant if he wanted to resolve his case by way of plea; defendant answered: "Correct. Yes."

During the plea colloquy, defendant admitted trial counsel had explained: the charges to which he was pleading; "the possibility of going to trial on all the original charges"; the potential exposure on each of those charges; "the potential that perhaps you would be successful at trial"; and that counsel reviewed all discovery "that the State . . . might be using against [him] at trial." Defendant also swore he understood by pleading guilty he was giving up his right to a jury trial. As the PCR judge found, defendant answered "[y]es" to the question in the plea form that asked if he understood "that by pleading guilty [he gave] up

A-5662-18T2

certain rights" including "[t]he right to a jury trial in which the State must prove [him] guilty beyond a reasonable doubt." Defendant also acknowledged he and trial counsel had spent "hours on this case, if not days." And defendant thrice said he was satisfied with trial counsel's services, the last time in response to the plea judge's offer:

> So, what I'm trying to say is, if you do not wish to enter a guilty plea today, or if you think you need more time, tell me now and I will give you that time, or I will stop the plea and let you walk out of here and set a trial date.

"[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." Cummings, 321 N.J. Super. at 170. Defendant's bald assertions about counsel's ineffectiveness, belied by the record, do not establish a prima facie claim. "Defendant may not create a genuine issue of fact, warranting an evidentiary hearing, by contradicting his prior statements without explanation." Blake, 444 N.J. Super. at 299. And, an evidentiary hearing is not to be used to explore PCR claims. See State v. Marshall, 148 N.J. 89, 157-58 (1997).

At no time during the extensive plea colloquy, despite numerous opportunities extended by the plea judge, did defendant voice any concern about forgoing his right to trial because counsel refused to represent him. Even after defendant had obtained new counsel, after the plea and before sentencing, he did

7

not inform the sentencing judge of that issue and proceeded to sentencing without objection or filing a motion to withdraw his plea.[4] His unsupported claims do not establish a prima facie case.

Nor did those unsupported claims meet the second Strickland-Fritz prong. Defendant has not proffered a defense to the charges or strategy that would have succeeded at trial. Nor has he demonstrated "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also State v. DiFrisco, 137 N.J. 434, 457 (1994). The victim said defendant had brandished a handgun during a domestic argument in a car, during which the victim was injured. Defendant never disputed that he had an unregistered handgun in the car for which he did not have a permit. The

---

[4] The PCR judge also found the retainer agreement executed by defendant and trial counsel provided "[t]he legal fee for handling these matters is a fixed fee of $50,000[.] The scope of this fee is post-indictment representation up until trial." Although we do not question the PCR judge's finding that the retainer agreement was "clear that if the matter proceeded to trial, additional funds would be necessary" and that defendant sent a letter to the court expressing dissatisfaction with his plea counsel in which he said he was able to pay only $25,000 of the required retainer, the retainer is not included in the appellate record. We are, therefore, unable to conduct a de novo review of that document. But we see, as the PCR judge found, neither at the plea hearing nor sentencing hearing did "[d]efendant contest the [r]etainer [a]greement, indicate that he would like to proceed to trial or indicate that finances were preventing him from proceeding to trial."

A-5662-18T2

aggregate sentence was actually the sentence imposed on the unlawful possession of a handgun count. The other indicted charges, including the attempted murder count, were dismissed pursuant to the plea agreement.

We determine defendant's argument that counsel was ineffective by failing to argue defendant's remorse as a mitigating factor is without sufficient merit to warrant discussion in this opinion. R. 2:11-2(e)(2). We add these brief remarks.

After defendant expressed his remorse to the sentencing judge no fewer than five times during his allocution, not only did sentencing counsel highlight the letter defendant wrote to the sentencing judge in which defendant said he was "extremely remorseful for his actions," counsel told the judge: "Your honor, I think . . . my client summed it up. He's very remorseful." Thus, defendant failed to show that sentencing counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" so as to satisfy Strickland-Fritz's first prong. See Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 52.

Furthermore, defendant failed to show how counsel's error—which we do not perceive—resulted in a different sentence. The sentencing judge reviewed defendant's actions before, during and after the crimes. The judge discerned

defendant's "real problem is his emotions. He gets so emotional that if you couple that with substance abuse, . . . having some control issues clearly, he could have a propensity to lose it. And that is exactly what happened" when he committed the aggravated assault on his former girlfriend with a gun, left her at the entrance of the hospital emergency room and kept a police emergency response unit at bay for hours while a hostage negotiator tried to secure his surrender. Although the sentencing judge noted defendant, since the charges were levied, had "[n]o violations of the restraining order, [had undergone] drug and alcohol treatment, [had gone] AA meetings[] [and had seen] psychiatrists and psychologists to help him deal with these issues," he found defendant still could not control himself at times during court proceedings and had "a long way to go" to address the problems that had precipitated his crimes.

Even if defendant's remorse was not advanced as a mitigating factor, defendant's apologies would have had no impact on the midpoint sentence the judge imposed after his careful consideration of the aggravating and mitigating factors, finding aggravating factors nine and fifteen, because defendant had committed an act of domestic violence and needed to be deterred from committing such acts in the future, and mitigating factors seven and nine,

because defendant had no prior criminal history and was unlikely to commit an act of this nature in the future.  <u>See</u> N.J.S.A. 2C:44-1(f)(1)(c).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION