**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0927-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTONIO SUAREZ-PEREZ,
a/k/a/ ANTONIO D. SUAREZ,
ANTONIO D. PEREZ and
ANTONIO D. SUAREZPEREZ
MINGO,

    Defendant-Appellant.

_____

Submitted December 14, 2020 – Decided April 9, 2021

Before Judges Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 09-07-1405.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Mary R. Juliano, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the denial of his petition for post-conviction relief. For the reasons set forth below, we affirm.

I.

We incorporate and summarize the relevant facts from our opinion on the direct appeal. State v. Suarez-Perez, No. A-0384-12 (App. Div. December 1, 2015) (slip op. at 1-7). Co-defendants Figueras and Hearn, along with other witnesses, testified at trial regarding events leading up to the murders of the two victims, Wakefield and Fann, on the night of February 10-11, 2009.

Figueras and Hearn were together at Figueras's home. Defendant joined them and showed them a black gun he was carrying. He told them the gun held ten bullets. Defendant asked Hearn to drive him to an apartment complex where his brother lived on Locust Avenue in Red Bank. Hearn drove defendant and Figueras in his dark blue Audi. At a parking lot outside the complex, defendant exited the car and again showed them the gun. The three men bought and drank beer, and defendant talked with his brother and other relatives.

Defendant next asked Hearn to drive him to a housing development. On the way, however, defendant asked Hearn to slow down, and appeared to be looking for someone. He then asked Hearn to drive to a nearby gas station, where Wakefield's white Lexus was parked. At the gas station, Hearn saw defendant speaking with Wakefield and Fann. When defendant returned to Hearn's car, defendant seemed upset. Defendant, Hearn, and Figueras returned to the parking lot on Locust Avenue. As soon as Hearn parked the Audi, defendant got out, told them to wait, said he would be right back, and walked out of sight.

Shortly thereafter, at about 1:30 a.m., neighborhood residents heard multiple gunshots and went to their windows. One eyewitness saw a man, wearing dark clothes and a hood over his head, standing over and shooting a victim lying face down on the ground. The man then ran up to a white car, and there was another gunshot. A second eyewitness saw a hooded man standing in the street firing, and then run around the corner. A third eyewitness saw a hooded man wearing dark clothes running back down Locust Avenue. The eyewitnesses heard up to ten gunshots.

Defendant later told Figueras that he had been paid $30,000 to kill the two men. He later told an inmate that he alone killed the two men. He described to

3

the inmate how he approached the car from the passenger side, then shot the passenger twice and the driver once. He shot the driver again as the driver tried to flee the vehicle.

The police arrived on the scene and found Wakefield lying dead in the street. He was shot a total of eight times, including three times in the back of the head. Bloodstains on the driver's door and street indicated Wakefield was wounded in the white Lexus, had gotten out and fallen on the street. Evidence showed he had been shot repeatedly on the street where he fell. The police found Fann dead in the front passenger seat of the white Lexus. He had been shot twice in the right side of the head. Both victims were shot at close range. Both had cash and cocaine on their persons.

After the first few gunshots, defendant's brother called from his apartment window and asked if it was defendant. Hearn and Figueras testified that right after they heard the last gunshot, defendant came hurrying toward them, red in the face, out of breath, and looking over his shoulder. Defendant got back in the Audi, repeatedly saying "Let's go!" or "Go!" As Hearn drove, defendant showed Figueras he now had some crack cocaine. As they drove away, Figueras heard defendant say, "damn, I just killed both of these mother f-----s." Defendant

A-0927-18

removed the clip from the gun and added, "damn, I emptied the clip on both of those mother f-----s," and said the gun was jammed.

Patrolman James DePonte quickly responded to reports of multiple gunshots at 1:35 a.m. As he drove to the scene, he saw a dark blue or black Audi traveling in the opposite direction one block from the scene. DePonte shined his spotlight on the car, which contained three men. As the Audi drove past, the man in the back seat turned around and looked back. Patrolman DePonte arrived at the scene, found the two victims, and pursued the Audi. After a pursuit at extreme speed, he stopped the Audi at an intersection. He and another officer found Hearn in the driver's seat, Figueras in the front passenger seat, and defendant in the rear seat. The officers arrested the three men. Defendant was wearing a dark hooded sweatshirt, a dark coat, dark sneakers, and blue jeans.

In the Audi, the police discovered a ski mask which smelled of defendant's cologne and bore his DNA. The police tested the three men's hands for gunshot residue. Only defendant's hands tested positive for gunshot residue. Subsequent testing found a very high number of gunshot residue particles on defendant's ski mask, hooded sweatshirt, coat, and jeans.

A-0927-18

Right before the Audi had been stopped, Figueras had seen defendant stick his hand out of the open car window. Later that morning, a citizen found a 9 mm semi-automatic gun lying on the side of the road near where the Audi had been stopped. The gun had a capacity of ten bullets. It was empty. Ten shell casings and six testable bullets were recovered from near the shooting victims' bodies. Admissible evidence linked the shell casings and the bullets to that gun.

Defendant was indicted for the first-degree murders of Wakefield and Fann. Co-defendant Figueras was similarly charged. Defendant, Figueras, and Hearn were also charged with first-degree armed robbery and first-degree felony murder. The three were charged with various weapons offenses as well. Finally, defendant and Figueras were charged with evidence tampering, while Hearn and Figueras were charged with obstruction and hindering. Hearn and Figueras pled guilty to hindering, and they each testified against defendant at his murder trial. Defendant presented no witnesses.

After trial, the jury convicted defendant of the murders of Wakefield and Fann, the firearm and handgun offenses, and tampering. The jury acquitted defendant of armed robbery, and thus did not reach the felony murder counts. The trial court sentenced defendant to consecutive life terms without parole for

the two murders. The court imposed concurrent sentences on the weapons and tampering convictions.

Defendant raised five issues on appeal, two of which are relevant here. The remaining issues were resolved during the direct appeal and not argued in defendant's PCR application. First, defendant argued the State used the "truthful testimony" condition of the co-defendants' plea bargains to bolster their credibility, which defendant argued constituted impermissible vouching. Second, defendant argued defendant's right to a fair trial was violated when a State witness testified that the two cooperating co-defendants gave "truthful" proffer statements.

On December 1, 2015, we rejected each of defendant's arguments on direct appeal and affirmed his conviction and sentence. The Supreme Court denied defendant's petition for certification[1] on March 14, 2016.

II.

Defendant filed a petition for post-conviction relief. The State filed opposition. Defendant made two arguments before the PCR judge.

Defendant first argued that trial counsel failed to object to the State bolstering or vouching for Hearns and Figueras, the co-defendants who testified

---

[1] State v. Suarez-Perez, 224 N.J. 282 (2016).

against the defendant as part of their plea agreement. Defendant also argued trial counsel didn't object to the State's mention during openings and summations of co-defendants' plea agreement. The PCR judge noted we disposed of the same arguments on appeal by concluding Hearns' and Figueras's written plea agreements were admissible as relevant to their interests in testifying at trial. Suarez-Perez, slip op. at 13. He further noted we held on direct appeal it was permissible for the State to reference contents of the plea agreements in the State's openings and closings, where it did so accurately and in a manner faithful to their respective contents. Suarez-Perez, slip op. at 15-16. The PCR judge found no ineffective assistance of counsel where we held the plea agreements admissible, and the State's references to the agreements not bolstering.

Next, defendant argued trial counsel was ineffective for failing to call a potential witness, Lawrence McLendon, to testify for the defense. In 2009, McLendon gave a statement to authorities in which he said Figueras confessed to shooting the victims. McLendon had a significant and lengthy criminal history which included state and federal convictions for sexual assault and robbery. Defendant's trial counsel obtained McLendon's statement, however, she elected not to call McLendon at trial. Rather, she elicited Figueras's "confession" through a detective and Figueras himself. Trial counsel also

addressed McLendon's absence from trial in her closing, calling his potential testimony "repetitive." The PCR judge concluded that her decision not to call McLendon was reasonable trial strategy, not ineffective assistance of counsel.

The PCR judge found neither argument demonstrated a prima facie claim of post-conviction relief. State v. Preciose, 129 N.J. 451, 462 (1992). He found no need for an evidentiary hearing on the record presented.

On appeal, defendant reprises the arguments he made before the PCR judge:

> This Matter Must Be Remanded for an Evidentiary Hearing Because Defendant Established a Prima Facie Case of Trial Counsel's Ineffectiveness for Failing to Object to the Prosecution's Vouching for and Bolstering the Co-Defendants' Testimony and for Failing to Have a Key Witness Testify.
>
> > A. Trial Counsel Failed to Object to the Prosecution's Vouching for and Bolstering the Co-Defendants' Testimony.
> >
> > B. Trial Counsel Failed to Have Lawrence McLendon Testify.

III.

When petitioning for PCR, a defendant must establish he is entitled to "PCR by a preponderance of the evidence." State v. O'Donnell, 435 N.J. Super. 351, 370 (App. Div. 2014) (quoting Preciose, 129 N.J. at 459). We analyze

9

ineffective assistance of counsel claims by using the two-prong test established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984). <u>See</u> <u>Preciose</u>, 129 N.J. at 463; <u>see also</u> <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987). The first prong of the <u>Strickland</u> test requires a defendant to establish counsel's performance was deficient. <u>Preciose</u>, 129 N.J. at 463. "The second, and far more difficult, prong is whether there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Id.</u> at 463-64 (quoting <u>Strickland</u>, 466 U.S. at 694).

There exists a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Strickland</u>, 466 U.S. at 689. Further, because prejudice is not presumed, defendant must demonstrate how specific errors by counsel undermined the reliability of the proceeding. <u>State v. Drisco</u>, 355 N.J. Super 283, 290 (App. Div. 2002) (citing <u>U.S. v. Cronic</u>, 466 U.S. 648, 659 (1984)).

IV.

Where a PCR court does not conduct an evidentiary hearing, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." <u>State v. Blake</u>, 444 N.J. Super. 285, 294 (App. Div. 2016) (quoting <u>State v Harris</u>, 181 N.J. 391, 421 (2004)). The record shows the defendant has failed

A-0927-18

to overcome the "strong presumption that [trial] counsel rendered adequate assistance," and that she "exercise[d] reasonable professional judgment." Strickland, 466 U.S. at 689.

Defendant's first PCR argument, the State's use of the co-defendant's plea agreements, closely tracks his unsuccessful direct appeal arguments. The PCR judge properly rejected it, as the "bolstering" claims were resolved on direct appeal and could not serve as a basis for a subsequent PCR application. Defendant's second argument, ineffectiveness of counsel due to failure to call McLendon, was also properly rejected by the PCR judge as reasonable trial strategy. By not calling McLendon at trial, trial counsel avoided McLendon's likely impeachment on the witness stand, given his damaging criminal history. She placed the substance of McLendon's statement into evidence through other witnesses. She provided jurors an explanation for her decision not to call McLendon in her closing. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a claim for PCR based upon ineffective assistance of counsel. State v. Cooper, 410 N.J. Super. 43, 57 (App. Div. 2009) (quoting Strickland, at 690-91 (1984)).

A-0927-18

After reviewing the record, for the reasons set forth above, as well as in the PCR judge's thorough written opinion, we conclude defendant failed to meet his burden to show ineffective assistance of trial counsel. <u>Preciose,</u> 129 N.J. at 463. There is no basis for an evidentiary hearing on this record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION