**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0003-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALLISON NASTA,
a/k/a ALISON BONNAR,

    Defendant-Appellant.

_____

Submitted April 19, 2021 – Decided May 24, 2021

Before Judges Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 13-09-2505.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (John J. Santoliquido, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Allison Nasta appeals from a July 11, 2019 Law Division order denying her petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

We begin by summarizing the relevant facts from our opinion on defendant's direct appeal, State v. Nasta, No. A-3951-14 (App. Div. Feb. 23, 2017) (slip op.), and from the PCR record. On August 28, 2012, defendant was driving a minivan with her husband in the front passenger seat and their two-month-old and five-year-old daughters in the rear seats. At approximately 12:45 p.m., defendant crashed the vehicle into a light pole while driving on the Black Horse Pike in Pleasantville. Defendant's husband died due to injuries sustained in the crash, and both daughters required hospitalization.

Though defendant was able to speak and walk on her own at the scene of the accident, EMTs transported her to the hospital. There, at approximately 2:50 p.m., police obtained a blood sample from defendant without a warrant. The record does not reflect the total quantity of blood taken. Police also obtained two recorded statements from defendant. The admissibility and reliability of the State's testing of this blood sample became a major issue at trial, on direct appeal, and now, on defendant's efforts to secure PCR. Defendant's recorded

statements to police, which were not admitted at trial, are also a focus of defendant's PCR petition.

Police initially sent the blood sample to the New Jersey State Police Crime Lab (NJSP lab) where it was tested for alcohol and drugs. The single page of the toxicology worksheet[1] provided by defendant indicates the NJSP lab received approximately nine milliliters of blood, deposited within two gray ten milliliter tubes, one containing approximately five milliliters of blood and the other containing four milliliters. The worksheet also indicates the NJSP lab received and started testing the sample on September 7 and completed its testing and report on October 10, 2012. At least five milliliters of blood were tested.

The NJSP lab followed a two-tiered procedure to screen the sample. First, the lab employed an instrument called ELISA, which serves as preliminary indicator that a particular category of drugs may be present. However, according to Michael Kennedy Jr., a forensic scientist for the New Jersey State Police and trial witness for defendant, the ELISA results are not "confirmatory in any way" and require additional testing to confirm the presence of any detected drugs. Thus, when ELISA reveals a positive result, the sample undergoes a second test

---

[1] At the bottom of the page provided by defendant, the worksheet reads, "Page 1 of 15[.]"

A-0003-19

using a gas chromatography mass spectrometry (GCMS) to identify specific substances in the sample.

When the NJSP lab tested the blood sample obtained from defendant, the ELISA test yielded a positive finding for benzodiazepines and general opiates, necessitating further testing with the GCMS. However, the GCMS test results concluded drugs were "not detected." At defendant's trial, Kennedy explained this result was not necessarily a negative result, as drug levels could fall below what the instrument can detect. He noted other equipment, such as found in a private lab, might detect a substance where the GCMS failed.

Police then delivered the blood sample to NMS Labs, a private laboratory in Willow Grove, Pennsylvania to perform a toxicology analysis. NMS's toxicology report, issued on January 5, 2020, provides the lab received on December 28, 2012 two gray top tubes of blood, one containing approximately four milliliters and the other containing approximately 2.75 milliliters. NMS's testing detected positive amounts of cotinine, codeine, and morphine in defendant's blood. Cotinine is a metabolite of tobacco, while codeine and morphine are metabolites of heroin.

On September 19, 2013, an Atlantic County grand jury returned an indictment charging defendant with second-degree vehicular homicide, N.J.S.A.

A-0003-19

2C:11-5 (count one); two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4 (counts two and three); fourth-degree causing serious bodily injury while driving with a suspended or revoked license, N.J.S.A. 2C:40-22(b) (count four); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4) (count five); and third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1) (count six).

Defendant moved to suppress the blood test evidence, and on August 8, 2014, the trial court held a suppression hearing. The trial court ultimately denied defendant's motion, finding the police had probable cause to draw defendant's blood and lawfully sent the blood sample to a private lab to conduct a second toxicology test.

The case proceeded to trial before a jury, beginning on January 14, 2015. The parties presented detailed testimony regarding the testing of defendant's blood. Most significantly, Dr. John Brick, a forensic pharmacologist testifying on behalf of the State, explained to the jury that heroin is metabolized to morphine, and morphine is responsible for the primary effects of heroin on its users. Dr. Brick stated defendant's morphine concentrations were "significantly elevated" to the point they could affect the brain to change behavior.

5

Multiple police officers who responded to the scene of the accident testified on behalf of the State. Sergeant Herbert Simons of the Pleasantville Police Department, trained in accident reconstruction and drug recognition, testified that he spoke with defendant at the accident scene and believed her to be under the influence because she was inattentive, appeared to be staring off into space, and nodded off during conversation. Additionally, Sergeant Simons recounted that while tracing the path the car travelled after hitting the light pole, he discovered baggies of heroin amongst other debris in car's path. Sergeant Simons opined that the heroin flew out of the driver's side window after hitting the pole.

Detective Steve Sample of the Pleasantville Police Department and Sergeant James Rosiello of the Atlantic County Prosecutor's Office responded to the scene and later interviewed defendant at the hospital. Both testified that defendant appeared to be under the influence because there were points during the interview where defendant slurred her speech, swayed back and forth, appeared to nod off, and experienced a range of emotions. Detective Sample described defendant's eyes as "droopy", and Sergeant Rosiello recounted they were "bloodshot and watery."

A-0003-19

The jury heard closing arguments on January 28, 2015. During the State's closing, over defendant's objection,[2] the prosecutor emphasized that both the preliminary ELISA screening and the NMS testing showed defendant had opiates in her system.

On January 29, 2015, the jury found defendant guilty of count one (second-degree vehicular homicide), count four (causing serious bodily injury while driving with a suspended or revoked license), and count six (possession of a controlled dangerous substance). The jury acquitted defendant of the remaining charges. The trial court sentenced defendant to a seven-year term of incarceration on March 13, 2015.

Defendant appealed her conviction and sentence, arguing, in the relevant part, that the testing of her blood was impermissibly conducted without a warrant, the prosecutor's summation inaccurately related the results of the NJSP lab's blood testing, and trial counsel rendered ineffective representation by failing to seek admission of defendant's recorded statement for the purpose of rebutting the State's allegation of intoxication. On February 23, 2017, we issued an unpublished decision, rejecting the first two arguments, declining to address

---

[2] After the jury returned its verdict, defendant moved for a new trial, again contesting the prosecutor's statements during closing. The judge denied this motion just before sentencing on March 13, 2015.

A-0003-19

the third argument, and affirming defendant's conviction and sentence.[3] Nasta, slip op. at 21-27, 30-32. Our Supreme Court denied defendant's petition for certification on April 24, 2018.

On June 13, 2018, defendant filed for PCR, alleging she was denied effective assistance of counsel because her trial counsel failed to properly investigate and consult experts about discrepancies in the testing of her blood, failed to introduce recordings of her interviews with police to show she was not intoxicated, and failed to properly cross-examine the State's expert witness. The PCR court denied defendant's petition without an evidentiary hearing on July 11, 2019.

This appeal followed, with defendant presenting the following points of argument:

> POINT ONE
>
> THE PCR COURT ERRED IN DENYING MS.
> NASTA AN EVIDENTIARY HEARING AS
> TESTIMONY IS NEEDED FROM TRIAL COUNSEL
> REGARDING HIS FAILURE TO CONSULT WITH
> A FORENSIC EXPERT TO CHALLENGE THE
> STATE'S FORENSIC EXPERT AND TO

---

[3] While we affirmed defendant's conviction and sentence, we remanded for the limited purpose of amending defendant's judgment of conviction. Nasta, slip op. at 40. The judgement of conviction incorrectly listed count four as a third-degree offense rather than a fourth-degree offense. Ibid.

A-0003-19

CHALLENGE THE RESULTS OF THE STATE'S
TWO BLOOD TESTS.


POINT TWO

THE PCR COURT ERRED IN DENYING MS.
NASTA AN EVIDENTIARY HEARING AS
TESTIMONY IS NEEDED FROM TRIAL COUNSEL
REGARDING HIS FAILURE TO PROPERLY
MOVE FOR THE INTRODUCTION OF MS.
NASTA'S RECORDED STATEMENT TO POLICE.


II.

To succeed on a petition for PCR, a defendant "must establish the right to such relief by a preponderance of the credible evidence." State v. Preciose, 129 N.J. 451, 459 (1992). To sustain that burden, the defendant must set forth specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

An evidentiary hearing is required on a PCR petition only if the defendant presents a prima facie case in support of PCR, the court determines there are material issues of disputed fact that cannot be resolved based on the existing record, and the court determines that an evidentiary hearing is necessary to resolve the claims for relief. R. 3:22-10(b). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim,

9

viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)).

"To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate the reasonable likelihood of succeeding under the test set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984), and United States v. Cronic, 466 U.S. 648 (1984), which we adopted in State v. Fritz, 105 N.J. 42, 58 (1987)." Preciose, 129 N.J. at 463. The defendant must show that: 1) counsel's performance was deficient; and 2) the deficient performance prejudiced the defendant. Strickland, 466 U.S. at 687.

To satisfy the first prong of the Strickland test, a defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. A deficient performance means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

To establish the second prong of the Strickland test, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

A-0003-19

outcome." Id. at 694. To meet this burden, the "defendant must demonstrate 'how specific errors of counsel undermined the reliability' of the proceeding." State v. Drisco, 355 N.J. Super 283, 290 (App. Div. 2002) (quoting U.S. v. Cronic, 466 U.S. 648, 659 n.26 (1984)).

### III.

In her PCR petition, defendant alleged her trial counsel's failure to consult with a forensic chemist or like-expert constituted deficient representation. According to defendant, such an expert would have identified issues with the State's testing of defendant's blood, enabling trial counsel to more effectively challenge the blood test evidence at trial. In support of this argument, defendant secured a report from Dr. Heather L. Harris, a forensic chemistry consultant, who reviewed the record and opined "that the areas of the case related to the toxicology evidence could have been more thoroughly investigated and reviewed by an expert for assistance with trial preparation and witness examination."

From her review of the toxicology evidence, Dr. Harris specifically "discover[ed] an issue with the blood samples that could impact the integrity of the blood samples tested by NMS Labs." Dr. Harris' report provides the following description of this potential issue:

11

The amount of [defendant]'s blood measured at NMS Labs is not consistent with the volume of blood received by NJSP and subsequently used in their testing process. The NJSP Toxicology Worksheet indicates that the laboratory received two [gray] top tubes containing approximately 5 milliliters (mL) in one tube and approximately 4 mL in the other tube for a total volume of blood of 9 mL. The analysis for blood alcohol, which was negative, used 1 mL of blood.[4] The analysis and confirmation for drugs, which was also ultimately negative, used 5 mL of blood. It is not clear which grey top tube was the source of each of the testing volumes, but it is clear from the NJSP toxicology worksheet that a total of 6 mL of [defendant]'s blood was used for testing.

Nevertheless, when the two grey top tubes attributed to [defendant] arrive at NMS Labs, one tube is reported to contain 4 mL and the other tube 2.75 mL for a total of 6.75 mL of blood. This is 3.75 mL more blood than should be present according to the NJSP Toxicology Worksheet, and it is an impossible volume if the NJSP laboratory used 6 of the total 9 mL of blood in their analysis as the worksheet indicates. If the same grey top tubes used for testing at NJSP were sent to NMS Labs, then NMS Labs should have received only 3 mL of blood, not 6.75 mL. Neither NJSP nor NMS Labs indicates any problems with the samples they received that might explain this discrepancy in volumes, and it is impossible now to do

---

[4] The single page of the NJSP toxicology worksheet provided by defendant indicates an ethyl alcohol analysis was performed on defendant's blood sample, but it does not indicate the quantity of blood used in this analysis or if it does, it is indiscernible. Perhaps in recognition of this, defendant's PCR petition and her appellate brief argue that the NJSP lab used five (not six) of the nine milliliters of blood, leaving four milliliters that could be tested at NMS labs; however, the record indicates that NMS received and tested 6.75 milliliters of blood.

> anything more than hypothesize about the cause. However, it is reasonable to question the integrity and provenance of the blood samples that were tested by NMS Labs.

In her brief supporting her PCR petition, defendant argued that Dr. Harris' report raises the question that the blood tested by NMS labs may not have even been defendant's, which effective counsel would have discovered via the help of an expert and explored at trial. Additionally, defendant contended an expert would have helped trial counsel explain the difference between the NJSP lab's results and NMS lab's results and show how the four-month delay between the two labs' testing likely effected the results.

The PCR court found this claim did not implicate either <u>Strickland</u> prong. The court found defendant merely assumed that the five milliliters of defendant's blood "were either thrown away or rendered unusable after they were tested at the NJSP" without offering any evidence in support of this assumption. The court noted that Dr. Harris did not state in her report "whether or not the first five (5) milliliters of blood became unusable or were discarded after the initial testing." She merely highlighted this discrepancy and concluded it was "'reasonable to question the integrity and provenance of the blood samples that were tested by NMS Labs.'" Thus, because defendant failed to offer evidence

13

showing the discrepancy in quantity of blood tested by the two labs had any significance, the court determined trial counsel's failure to challenge it was not deficient or prejudicial to defendant.

Defendant further argued her trial counsel's performance was deficient because he failed to offer the recordings of defendant's interview with police in the hospital to rebut the State's proofs that defendant appeared intoxicated after the accident. Instead, trial counsel argued the recordings were admissible through various exceptions to the rule against hearsay, which the trial court rejected, finding no hearsay exception applied. Defendant's PCR petition asserts that had trial counsel not been deficient, trial counsel would have recognized the interviews would not be hearsay if offered to show defendant's demeanor, rather than the truth of her statements in the recordings.

The PCR court acknowledged trial counsel may have been deficient for failing to recognize the correct avenue for admitting the recordings. However, the PCR court found any error here by trial counsel did not prejudice defendant, and thus, the second prong of the Strickland test was not met. The court stated, defendant "likely benefitted by the omission of the statement before the jury" because in the recording, defendant

> does sound intoxicated and, at times, manic. The recorded statement, coupled with the positive blood

14

test results for codeine and morphine, would likely lead a jury to believe she was intoxicated during the car crash and while giving her statement. But, in any case the other overwhelming evidence does not support [defendant]'s position that if the statement was admitted that there was a reasonable probability that the jury's verdict would have been different.

On appeal, defendant contends trial counsel's failure to consult with a toxicological expert and failure to properly introduce the recorded statement establish a prima facie claim of ineffective assistance of counsel. In turn, defendant argues the PCR court should not have summarily denied her PCR petition, but rather ordered an evidentiary hearing to obtain testimony from trial counsel regarding these two alleged errors.

Where a PCR court does not conduct an evidentiary hearing, we may "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (quoting State v Harris, 181 N.J. 391, 421 (2004)). Employing this standard of review, we reach the same conclusion as the PCR court and find defendant is not entitled to an evidentiary hearing or PCR.

In our view, defendant's PCR petition does not demonstrate the required prejudice necessary to establish a prima facie case of ineffective assistance of counsel. From the facts alleged in defendant's petition and our review of the

15

record, we discern no reasonable probability that result of defendant's trial would have been different had trial counsel avoided the alleged errors defendant identifies.

Even assuming trial counsel underperformed by not consulting with a toxicological expert to understand and identify issues with the two labs' blood tests, defendant fails to specify how the involvement of such an expert would have changed the outcome of her trial. Defendant posits that an expert would have helped trial counsel identify, understand, and explore at trial potential issues with the State's testing of defendant's blood sample. However, while it identifies potential issues trial counsel missed, defendant's petition does not show that any of these issues actually undermine the legitimacy of the two blood tests. Defendant offers no proof that even a rigorous exploration of the gap in time between the two tests and the discrepancy between the quantities tested and their results would have showed the tests were flawed or inaccurate. Therefore, defendant's suggestion that trial counsel securing a toxicological expert to challenge the blood tests would have led the jury to reject the blood tests is unsupported by evidence and entirely speculative. Because speculative assertions are insufficient to establish a prima facie case of ineffective assistance of counsel, State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999),

A-0003-19

defendant is not entitled to an evidentiary hearing or PCR on her claim that trial counsel's failure to effectively challenge the State's blood testing constituted redressable ineffective assistance of counsel.

We likewise find trial counsel's alleged incompetence in failing to introduce the recordings of defendant speaking with police at the hospital did not prejudice her. After reviewing the recordings, we agree with the PCR court that it would have done little to rebut the State's evidence showing defendant appeared intoxicated following the accident. At best, the recordings are inconclusive as to whether defendant sounded intoxicated or merely upset in the wake of an accident that resulted in her husband's death. However, given the other evidence offered by the State showing defendant was under the influence, we perceive no reasonable probability that had these recordings been played for the jury, the jury would have reached a different verdict. Therefore, defendant's claim concerning trial counsel's failure to introduce the record is insufficient to establish a prima facie case of ineffective assistance of counsel, and the PCR court did not err in declining to order an evidentiary hearing and denying PCR.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0003-19