# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3308-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

L.G.-M.,[1]

    Defendant-Appellant.

_____

        Submitted February 3, 2026 – Decided April 7, 2026

        Before Judges Rose and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 14-12-2073.

        Jennifer N. Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

        Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief).

---

[1] We use initials to protect the privacy of the victims and witnesses. R. 1:38-3(c)(12).

PER CURIAM

Defendant L.G.-M., after a remand, appeals from the April 10, 2024 Law Division order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. We affirm.

I.

Defendant, a non-citizen of the United States, immigrated from Guatemala in 2012 seeking asylum when he was twenty-two years old. Two years later, he was charged in a Monmouth County indictment with third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), and issued two summonses for lewdness, a disorderly persons offense, N.J.S.A. 2C:14-4(a). The charges stemmed from defendant's encounter with three teenage girls while swimming in the ocean in Belmar. The State alleged defendant exposed his penis to the trio, then grabbed the vagina and buttocks of one of the teens.

Defendant rejected the State's plea offer of non-custodial probation, Megan's Law registration, and no victim contact, and declined the opportunity to apply for the pretrial intervention program (PTI) notwithstanding his eligibility to do so without the Prosecutor's consent. At a March 16, 2015 status conference, the court had the following exchange with defendant:

A-3308-23

THE COURT: Okay. And you understand that you are eligible to apply to pre-trial intervention. Do you understand that?

[DEFENDANT]: Yes.

THE COURT: Okay. And that could result in a delay and ultimately dismissal of the charges. You understand that?

[DEFENDANT]: Yes.

THE COURT: But you do not wish to apply for PTI, is that correct?

[DEFENDANT]: That is correct.

The trial court also discussed with defendant the potential deportation consequences of the charges:

THE COURT: Now, I do want to know, are you a citizen of the United States?

. . . .

[]DEFENDANT: Not a citizen, a resident.

THE COURT: Okay. You should discuss with an attorney . . . possible repercussions relative to immigration. In other words, if you are found guilty of any of these charges . . . it may well and probably would, I would say almost certainly would, although I'm not giving you advice on immigration, have an effect on your status and I would expect would result in deportation. In other words, there are significant results and repercussions if you are found guilty of any charge. So you should discuss immigration

3

consequences with an attorney who is competent in immigration law . . . . Do you understand that . . . ?

[]DEFENDANT: Um-hum.

THE COURT: Okay.

[DEFENDANT'S COUNSEL]: . . . Your Honor, I am not an immigration attorney. However, I will direct my client to speak with an attorney who is competent in immigration matters . . . to conference with him and advise him of his rights.

THE COURT: Okay.

. . . .

THE COURT: . . . . And [defendant], you . . . should speak with an immigration attorney, because if you are found guilty it could have significant immigration consequences, including deportation. . . . .

On October 7, 2015, before the trial began, defendant's trial counsel told the judge he "had many opportunities to discuss the PTI program with [his] client[,]" but defendant did not wish to apply. Counsel said he "explained to [defendant] the advantages and maybe the disadvantages of . . . PTI but [defendant] feels confident that he wants to move forward with this trial at this moment." The trial judge engaged defendant in the following colloquy:

THE COURT: . . . [T]here is a procedure called [PTI]. Okay? And it appears you are eligible for that since you have no prior record of any offense . . . . If you were to successfully complete . . . PTI . . . there would

4

be a suspension of the prosecution and the charges could be dismissed against you.  Now, you've talked to your lawyer about that?

[]DEFENDANT:  Yes.

. . . .

THE COURT:  [PTI] . . . would not require as I understand it, there's no demand that you plead guilty so you could participate in PTI, and if you are successful, then the charge[s] would be dismissed.  Do you understand that?

[]DEFENDANT:  I do.

THE COURT:  All right.  Do you wish to apply for PTI or do you wish to accept the prosecution's offer of . . . noncustodial probation?

[]DEFENDANT:  I decide to continue on with the matter [sic].

THE COURT:  You don't want to apply for PTI even though that could result in dismissal of the charge[s]; is that correct?

[]DEFENDANT:  Correct.

Absent from the transcript is any indication trial counsel advised defendant about the immigration consequences of PTI.

Defendant waived his right to a jury trial and was convicted of all charges by the trial judge, who sentenced him to an aggregate six-month jail term on May 19, 2016.  The judge also imposed parole supervision for life and

5

registration as a sex offender under Megan's Law. Defendant later withdrew his direct appeal.

In December 2017, defendant was detained in federal immigration custody. He was subsequently deported.

In April 2018, defendant filed a PCR petition through counsel.[2] In support of his petition, defendant provided his own certification, and certifications of his PCR attorney and his then-current immigration attorney. Defendant claimed he first met with an immigration attorney one month after he was arrested and the attorney did not render "any immigration advice but she referred [him] to trial counsel." Defendant elaborated:

> As far as PTI, I thought that I would have to declare myself guilty. [Trial counsel] always said that I had a strong case. If he had explained to me that it was a weak case, I would have NOT taken the case to trial. There was a language barrier and although my sister did the translating, she was very young at the time.
>
> [Trial counsel] never told me anything about the immigration consequences. Based on what he told me, I thought we had a strong case and would win so I didn't think there would be any immigration problems. If he had said that my defense was implausible and that I would be deported if we lost then I would have taken

---

[2] Before defendant was placed in federal custody, he filed a PCR petition that was dismissed without prejudice for his failure to attend multiple case management conferences.

A-3308-23

any alternative disposition in order to avoid being deported back to Guatemala. A place that I fled from and sought asylum in the United States [sic].

PCR counsel certified he contacted trial counsel, who confirmed he "did not provide any immigration advice" to defendant. Trial counsel also acknowledged defendant's "family members translated for him" during their meetings. PCR counsel certified he contacted defendant's first immigration attorney, who confirmed "she did not provide any immigration advice" to defendant and "merely referred him to trial counsel." Defendant's then-current immigration counsel also certified she spoke with defendant's first immigration attorney, who said she told defendant that "she did not handle criminal immigration cases, and that he needed to hire a criminal defense attorney."

Following oral argument, the PCR judge, who was not the trial judge, issued a written decision, denying defendant's petition. The judge determined the United States Supreme Court's holding in Padilla v. Kentucky, 559 U.S. 356 (2010), and its New Jersey progeny did not apply because defendant did not enter a guilty plea. In addition, the judge determined defendant failed to demonstrate prejudice under the second prong of the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 700 (1984). Accordingly, the judge

declined to address whether defendant's trial counsel was ineffective under the first prong of Strickland.

We reversed. State v. L.G.-M., 462 N.J. Super. 357 (App. Div. 2020). We interpreted the holdings in Padilla, 559 U.S. at 369, and State v. Gaitan, 209 N.J. 339, 380 (2012), to impose an obligation on defense attorneys to advise their clients of the potential immigration consequences of any criminal disposition whether that disposition will result from a guilty plea, trial, or diversionary program. Id. at 365.

In light of our holding, and the certifications corroborating defendant's claim that he was not advised of the immigration consequences of PTI, we found defendant set forth a prima facie showing of trial counsel's deficient performance. Id. at 367. We also disagreed with the PCR judge's conclusion defendant was unable to demonstrate the prejudice prong of Strickland. Ibid. We noted the trial judge made defendant aware of the immigration consequences of a conviction after trial, but did not apprise him of the immigration consequences of entering PTI. Id. at 368. In addition, we observed the record was incomplete with respect to whether defendant would have been accepted into PTI had he applied, given the nature of the charges and defendant's insistence on his innocence. Id. at 367-69.

8

We remanded the matter to the PCR court for an evidentiary hearing to determine the immigration advice provided to defendant prior to his decision to go to trial, the immigration consequences of defendant's successful completion of PTI had that occurred, whether defendant received adequate advice about those consequences, and the likelihood defendant would have been accepted into PTI had he applied to the program. Id. at 369.

On remand, the PCR court held an evidentiary hearing over five days. The State presented the testimony of trial counsel. Defendant, who appeared remotely from Guatemala, testified on his own behalf and called his sister, who appeared in court.

Trial counsel testified as follows. He did not speak Spanish and defendant understood English "[f]or the most part, but he . . . did need help with interpretation." When they had conferences, trial counsel spoke to defendant only in English, and defendant's sister sometimes interpreted the conversation. He believed defendant understood his advice based on defendant's mannerisms, responses, and questions during their meetings.

Defendant's sister testified that when she translated for trial counsel, her command of English was not masterful and she did not understand all the words

A-3308-23

counsel used, requiring her to use Google translator to decipher the meaning of some of what trial counsel said to her brother.

Trial counsel discussed PTI with defendant, both when defendant's sister interpreted and when he met with defendant without her. He advised defendant if he entered PTI, the court would monitor him, and if he successfully finished the program, he would avoid deportation. Trial counsel explained to defendant how to enroll in PTI, recommended enrollment, and advised him to consult with an immigration attorney. Trial counsel did not give immigration advice to defendant, as he is not an immigration attorney, but recommended PTI to avoid deportation. He testified he, "told [defendant] that he would be able to avoid deportation if he completed the PTI program successfully." Defendant never gave a "hard" no when discussing PTI, but "he was so focused on going to trial and after we discussed . . . PTI . . . numerous times . . . he was maintaining his innocence and saying that he just wanted to move forward with the trial."

Defendant denied having been advised by trial counsel of the immigration consequences of PTI and being convicted at trial. PCR counsel asked defendant: "If you understood that you could participate in PTI without pleading guilty and that doing that would have protected you from deportation, would you have applied to PTI?" Defendant replied: "Correct. I would have accepted it

10

immediately." In addition, when asked if he "never fully understood" he could be deported if convicted at trial, defendant answered "[c]orrect" and stated there was "no way" he would have gone to trial if he understood the risk of deportation.

On April 10, 2024, the PCR court issued a written decision denying defendant's petition. The court found it was "clear from the record [defendant] was aware of any deportation consequences he could face as a result of a conviction by forgoing a PTI application, and knowingly proceeded to trial." The court based its finding on the testimony of defendant's trial counsel that either directly or through an interpreter he advised defendant as to the nature of the PTI program and how to apply for admission.

The PCR court also adopted trial counsel's testimony he advised defendant to consult with an immigration attorney regarding the consequences of PTI and noted his testimony was corroborated by defendant's sister's testimony. In addition, the PCR court found defendant subsequently told his trial counsel and the trial court he consulted an immigration attorney. The PCR court found defendant's exchanges with the trial court prior to the start of trial supported the finding defendant understood PTI did not require a guilty plea and entry into the program had potential immigration consequences. Thus, the court found

defendant did not prove trial counsel's performance fell below an objective standard of reasonableness.

In addition, the court found, even if trial counsel's performance was constitutionally deficient, defendant did not prove he suffered resulting prejudice. The court found no indication in the record defendant, who steadfastly maintained his innocence, including at the PCR hearing, would have deviated from his firm intention to proceed to trial. The court accepted trial counsel's testimony defendant "insisted that he understood PTI, adamantly maintained his innocence, and took the path of proceeding to trial." The court concluded, even if defendant was aware he was not likely to be deported if he successfully completed PTI, he would have elected to proceed to trial.[3]

An April 10, 2024 order memorialized the PCR court's decision. This appeal followed.

Defendant argues the PCR court erred because the record established: (1) he did not receive adequate advice from trial counsel given the language barrier and insufficient translation services during the representation; (2) trial counsel never advised him that he was not required to plead guilty to participate in PTI

---

[3] Given its decision regarding the effectiveness of trial counsel, the PCR court made no findings with respect to the immigration consequences of PTI or the likelihood defendant would have been accepted into PTI had he applied.

and would not be subject to deportation if he successfully completed PTI; (3) he did not understand the trial court's statement that he was not required to plead guilty to enroll in PTI; and (4) he would have applied for PTI, and been accepted into and completed the program had he received effective assistance of trial counsel.

II.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). Under Rule 3:22-2(a), a defendant is entitled to post-conviction relief if there was a "'substantial denial in the conviction proceedings' of a defendant's state or federal constitutional rights." Ibid. "A petitioner must establish the right to such relief by a preponderance of the credible evidence." Ibid. (citing State v. Mitchell, 126 N.J. 565, 579 (1992)). "To sustain that burden, specific facts" that "provide the court with an adequate basis on which to rest its decision" must be articulated. Mitchell, 126 N.J. at 579.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland, 466 U.S. at 686; State v. Fritz, 105 N.J. 42, 58 (1987)).

To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by <u>Strickland</u>, and adopted by our Supreme Court in <u>Fritz</u>. 466 U.S. at 687; 105 N.J. at 58.

Under <u>Strickland</u>, a defendant first must show that his or her attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." <u>Id.</u> at 688. A defendant also must show that counsel's "deficient performance prejudiced the defense[,]" <u>id.</u> at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" <u>id.</u> at 694.

In the context of plea negotiations, where a defendant's immigration status is at stake and the law is "succinct, clear, and explicit," counsel must affirmatively inform the defendant a conviction will result in removal from the country; where the law is not as clear, counsel must advise the defendant of the "risk of adverse immigration consequences" from a guilty plea. <u>Padilla</u>, 559 U.S. at 368-69; <u>see also</u> <u>Gaitan</u>, 209 N.J. at 356. An attorney need not use specific "magic words" to convey the applicable risk or likelihood of removal. <u>State v. Blake</u>, 444 N.J. Super. 285, 299-300 (App. Div. 2016). Accordingly,

"when counsel provides false or affirmatively misleading advice about the deportation consequences of a guilty plea, and the defendant demonstrates that he would not have pled guilty if he had been provided with accurate information, an ineffective assistance of counsel claim has been established." Gaitan, 209 N.J. at 351.

We have interpreted Padilla and Gaitan to impose an obligation on defense attorneys to advise their clients of the potential immigration consequences of any criminal disposition whether that disposition will result from a guilty plea, trial, or diversionary program. L.G.-M., 462 N.J. Super. at 366. In addition, in L.G.-M., we noted that in Pinho v. Gonzales, 432 F.3d 193, 215-16 (3d Cir. 2005), the court held completion of PTI without an admission of guilt does not constitute a "conviction" pursuant to 8 U.S.C.A. § 1101(a)(48)(A), a provision of the Immigration and Nationality Act concerning deportation. Ibid. Conversely, we found, "the successful completion of PTI, where defendant has not pled guilty – but has acknowledged guilt – could result in removal." Ibid.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697; State v. Marshall, 148 N.J. 89, 261 (1997). "If it is easier to dispose of an ineffectiveness claim on the

15

ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

We "defer to [the] trial court's factual findings made after an evidentiary hearing on a petition for PCR." Blake, 444 N.J. Super. at 294. "An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by [their] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

Having reviewed defendant's arguments in light of the record and applicable legal principles, we affirm the April 10, 2024 order. The PCR court, which had the opportunity to assess the credibility of defendant and his trial counsel, found defendant was advised he was not required to plead guilty to enter PTI, would not have been deported if he successfully completed the program, and would very likely have been deported if convicted at trial. In addition, the PCR court found defendant told his counsel and the trial court he consulted with an immigration attorney prior to trial. The PCR court found, after receiving this advice and consultation, defendant elected not to apply for

16

PTI and to proceed to trial. Defendant's decision, the PCR court found, was consistent with his unwavering insistence on his innocence.

Each of the PCR court's findings is supported by the record. Trial counsel testified he informed defendant about PTI and advised him to apply because he could avoid deportation if he successfully completed the program. The court accepted trial counsel's testimony and rejected defendant's claims he was not adequately advised of the immigration consequences of successful completion of PTI. In addition, the record establishes the trial court informed defendant he was not required to plead guilty to be accepted into the PTI program and there is no dispute defendant was aware he faced likely deportation if he was convicted at trial. We also find support in the record for the PCR court's conclusion defendant demonstrated no inclination to accept any resolution of the charges he faced other than obtaining an acquittal at trial. Thus, the record supports the PCR court's conclusion defendant was unlikely to apply for PTI, regardless of the advice he received from trial counsel.

We are not persuaded by defendant's remaining arguments, including his claim the language barrier with trial counsel prevented him from receiving effective assistance. The record establishes trial counsel was sufficiently able

17

to communicate with defendant, including by using defendant's sister as an interpreter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

18

A-3308-23